## ROBERT CARTER and NORRIS LEWIS, *vs.* CHARLES HARLAN and others.

A parol license to erect a dam which backed water upon the lands of the plaintiff is an *executory* as contradistinguished from an executed license, and as such is revocable.

A sale and conveyance of the overflowed lands made by the owner subsequent to the erection of the dam, is, *ipso facto*, by mere operation of law, a revocation of such a license.

Where one is permitted to do certain things on the land of another and an authority impliedly given to repair the thing erected in all time, the right must originate in *grant*, but where the license only authorizes the doing of a single act, it is revocable as to the part not executed.

The right to overflow another's land by a mill-dam, is an interest in land which cannot pass by parol; *per Tuck, J.*

APPEAL from Cecil county court.

This was an action of *trespass on the case,* brought on the 29th of October 1847, by the appellees against the appellants, to recover damages for an alleged injury to the plaintiffs' water-right and overflowing their land, occasioned by the erection of a dam in 1828 on defendants own land below that of the plaintiffs. The pleas were *non cul.* and limitations.

*Exception.* The facts proved in the case are substantially as follows: The plaintiffs' land was owned in fee by John Wilson in 1810, who mortgaged it in 1817. Under proceedings in equity on this mortgage it was sold in 1826, and conveyed in 1831 to Harris, by whom it was sold and conveyed in 1837 to Spencer, who, in the same year, conveyed it to Harlan and Fisler, the latter of whom also, in the same year, sold, and in 1839 conveyed, his interest to Harlan, who died seized of the whole some time before the commencement of this action, leaving the plaintiffs his heirs at law. The plaintiffs' mill was built by John Wilson in 1810, who placed the sheathing under the water-wheel, and the water-wheel itself seven and-a-half inches lower than the present sheathing and water-wheel of the plaintiffs. The defendants' present dam was erected in 1828, one-fourth of a mile below the plaintiffs'

Carter and Lewis, *vs.* Harlan, *et al.*

mill, and backs the water up to or very near the present sheathing of the plaintiffs' water-wheel and above the level of a certain rock, which was the point to which they had the right to back the water. The back-water of this dam in the tail race of plaintiffs' mill could be plainly seen and observed by any person at said mill. There had been an old dam higher up than the present one, used to supply water to a woollen factory then worked on the same spot where defendants' mill now stands. This old dam was not permitted to, nor did it back the water up so high as the present one; it was used from 1794 to 1816, and the next user of the water was by the erection of the present dam in 1828, which has remained at its present heighth ever since its erection. The plaintiffs' mill was idle part of the time it was owned by Harris and Spencer, and carried on part of the time by tenants, they, (Harris and Spencer,) living in New Jersey. The defendants then asked of the court an instruction to the jury, in substance as follows:

If the jury find from the evidence that defendants' present dam was built to its present height during or shortly after the year 1828, and has been so kept up ever since; that it was and is within one-fourth of a mile of plaintiffs' factory, and then and since has backed the water within sight of said factory in the same manner, and that no complaint about the said dam or back-water was ever made by John Wilson, the owner of plaintiffs' property, when such dam was constructed; nor by Harris, who purchased said property in 1831; nor by Spencer, who bought the same from Harris; nor by Fisler and Harlan, (the latter of whom is the father of plaintiffs, and from whom they inherit,) who bought the same in 1837; nor by Harlan, who purchased the interest of Fisler in 1839, and continued to occupy it and carry on the plaintiffs' mill up to his death, in 1847; nor by plaintiffs, except in bringing this suit; and that none of the parties under whom plaintiffs claim ever resisted or interrupted the enjoyment by defendants of their claim to keep up said dam and back said water during all of the said period, since the erection of the said dam by

the defendants; nor was there any interruption by plaintiffs of the said user and enjoyment by defendants until by the institution of this suit: that then such circumstances are evidence from which the jury may find that the plaintiffs, and those under whom they claim, consented and licensed the defendants to back water by means of their said dam; and that if they so find, then plaintiffs are not entitled to recover in this action for any injury or damage by means of the said dam.

This prayer the court, (HOPPER and ECCLESTON, A. J.,) rejected, and the defendants excepted, and the verdict and judgment being against them appealed.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*Alexander Evans* for the appellants, contended, that the facts stated in the above bill of exceptions was evidence to go to the jury for their consideration; that a license *might* be inferred from these facts; that if inferred it was a bar to the action, which could only have been successfully maintained after notice to defendants before suit was brought, of revocation of license, permission or consent. He then argued at length the following points;

1st. That the right to use the water in the manner in which it was used might be given by license, and that such license would protect the defendants from an action until the same was revoked; and that in cases like the present, and when coupled with an interest, that such revocation was not within the power of the plaintiffs; at any rate, (which is sufficient for the purposes of this case,) that such a license while unrevoked was a complete protection against any demand for damages. On this point he cited and commented upon the following authorities: 2 *Amer. Lead. Cases*, 686. 18 *Pick.*, 569, *Kent vs. Kent.* 5 *Greenlf.*, 15, *Clement vs. Durgen.* 6 *Hill*, 64, *Miller vs. Auburn & Syracuse Rail Road Co.* 11 *Conn.*, 528, *Parsons vs. Camp.* 2 *Denio*, 625, *Heaney vs. Heeney.* 2 *Gill*, 222, *Addison vs. Hack.* 15 *Ohio Rep.*, 252, *Wilson vs. Chalfant.* 13 *Conn.*, 306, *Johnson vs. Lewis.* 11

*Adol. & Ellis,* 34, *Wood vs. Manley.* 7 *Bing.,* 690, *Liggins vs. Inge.* 14 *Seargt. & Rawle,* 267, *Rerick vs. Kern.* 1 *Greenlf. Rep.,* 117, *Ricker vs. Kelly.* 15 *Wend.,* 385, *Mumford vs. Whitney.* 11 *New. Hamp.,* 108, *Ameriscoggin Bridge vs. Bragg.* 1 *Adol. & Ellis,* 536, *Bridges vs. Blanchard.* 8 *East,* 308, *Winter vs. Brockwell.* *Palmer's Rep.,* 71, *Webb vs. Paternoster.*

2nd. That such license may be inferred from the acts or behavior of the plaintiffs, as well as proved by express permission, and that it may be a parol license. In support of this proposition he cited, in addition to many of the authorities under the first point: 1 *Saund. on Pl. & Ev.,* 47. *Best on Presumptions,* 143, in 47 *Law Lib.,* 97. 4 *Seargt. & Rawle,* 245, *Le Fevre vs. Le Fevre.* 11 *Mass.,* 537, *Cook vs. Stearns.* 8 *Metcalf,* 34, *Nettleton vs. Sikes.* 2 *Eq. Cases Abr.,* 522, and the case of *Short vs. Taylor,* there cited. 3 *Kent's Com.,* 433. 12 *Johns.,* 408, *Adams vs. Freeman.* 2 *Starkie on Ev.,* 26. 11 *East.,* 56, *Foley vs. Wilson.* 2 *Saund. on Pl. & Ev.,* 632.

3rd. That such acts and behavior as are mentioned in the bill of exceptions were circumstances from which a jury *might* infer a license, and that therefore they were improperly withheld from the jury. This proposition is established if the two preceding ones are maintained, since, if the license be an excuse, any facts tending to show it ought necessarily to go to the jury.

*Otho Scott* for the appellees, filed a written argument, of which the following is an abstract:

It is said the court below erred in refusing to grant the appellants' prayer, because:—1st, there was proof to go to the jury of a parol license; 2nd, no proof of a countermand; 3rd, that the right to flow the plaintiffs' land could pass by a parol license.

As to proof of license, *Mr. Scott* commented upon the testimony to show that neither Wilson nor Harris, who alone could have given license to build the dam, nor Spencer, ever

gave such permission or license to flow the land; that the fact that Fisler and Harlan, and the heirs of the latter, made no complaint, except by bringing this suit, furnishes no evidence that a license was given to build the dam, and that the license set up is not one to let the dam remain, but to build it.

As to there being no proof of a revocation of the license: Regarding it as a mere license, as distinguished from a grant, every sale of the land was a revocation; so was the death of Harlan a revocation, and his minor heirs could make no other revocation or complaint than the one they did make, by bringing suit. The prayer assumes that the license was revocable, and the counsel, in his argument, admits it might have been revoked. He claims but a temporary privilege, and no doubt does this to avoid the difficulty there would be in claiming a permanent right to flow the lands of another under a presumed parol permission. As a mere authority or permission, which is the kind of license it is claimed to be, both in the prayer and argument, it was revoked by each of the various sales and transfers of Harlan's land, which were made after the building of the dam, and no new license could be presumed against Harlan's infant heirs, and the court were therefore right in refusing a prayer which assumed there was no evidence to show a revocation of the supposed license. 11 Mass., 533, Cook vs. Stearns. 4 Mees. & Wels, 538, Wallis vs. Harrison, et al.

The other question, whether the right to flow the land of another can pass by a parol license, is involved by the various decisions, in some confusion. The distinction between a mere license and a contract is not adverted to in some of the cases, and in the States having no chancery courts defendants have been permitted in actions at law to avail themselves of contracts which, in this State, would not be recognized in courts of law, and would be specifically executed only in courts of equity. Of this class are the cases cited from 4 Seargt. & Rawle, 241, and 14 Seargt. & Rawle, 267. But in this State, where the transfer of all easements affecting land is subject to the common law, the statute of frauds, and the acts of Assembly

Carter and Lewis, *vs.* Harlan, *et al.*

regulating conveyances, it is suggested that the right here claimed could not pass by parol license. The right to overflow land is an incorporeal hereditament. *4 Johns. Rep.*, 81, *Thompson vs. Gregory*, cited with approbation in 1 *G. & J.*, 383, and *Woolrych on Water Courses*, 146. At common law no such right could pass by parol. Corporeal hereditaments were said to lie in livery and could only pass by livery of seizin, incorporeal lay in grant and could only pass by deed. *Coke Litt.*, 9, *a.* 1 *G. & J.*, 366, *Hays vs. Richardson.*

If the right in this cause could be claimed under a parol license, permanent easements in land would be created in contravention of the common law, the statute of frauds, and our registry laws, for if such rights could originate in parol license, it is clear that the license would be irrevocable. If the license be allowed at all it must be co-extensive with the purpose for which it was given. A revocable license merely to build a dam which backed the water on another's land would never be asked, given, or presumed. If in such case there were a license, it must be to build a dam and keep it up as long as it was necessary to the mills which it supplied with water. All licenses of this sort have been regarded as grants of an easement, and where the rules of law did not forbid, have been enforced as grants, as in the cases cited from *Seargt. & Rawle.* The claim here being to flood the lands of Harlan for an indefinite period, or in perpetuity, under a parol agreement or license, is void. This is well established by the following cases: 4 *East,* 107, *Fentiman vs. Smith.* 11 *Eng. C. L. Rep.*, 207, *Hewlins vs. Shippam.* 13 *Mees. & Wels.*, 837, *Wood vs. Leadbitter.* 11 *Mass.*, 533, *Cook vs. Stearns.* 9 *Cowen*, 279, *Russell vs. Scott.* 1 *G. & J.*, 366, *Hays vs. Richardson.* 15 *Wend.*, 380, *Mumford vs. Whitney.* They overrule the cases of *Wood vs. Lake; Webb vs. Paternoster; Taylor vs. Waters;* and cases adopting the same principle.

The cases of *Winter vs. Brockwell*, 8 *East*, 308; *Liggins vs. Inge*, 7 *Bing.*, 682; *Addison vs. Hack*, 2 *Gill*, 221, are founded on the distinction between a license to waive an easement and

4     v.6

a right to create one, the former of which they say may be done by parol. They do not apply to this case, and therefore need not be examined.

Another class of American cases is evidently based on the idea, that when these licenses have induced expenditure of money and labor, they are contracts for grants, and to be enforced in courts of equity.

It is suggested that the case of *Hays vs. Richardson*, settles all the principles contended for by the appellees in this case. The court there decide that an easement to be used in the lands of another can only pass by a deed acknowledged and recorded, and, in the opinion of the court, the case of damming up a stream and overflowing the land of another, is given as one of the easements to which the principles they adopt would apply.

The appellant might establish the right he claims by deed or length of possession, from which a deed could be presumed, but he does neither. Less than twenty years will in no such case warrant this presumption. This is one of the fixed principles of the law; to cite authorities would be useless, and to depart from it would unsettle the doctrine of presumption from lapse of time.

LE GRAND, C. J., delivered the opinion of this court.

Although the various questions presented by the respective counsel were argued with great fullness and ability, in the view we have of the case, there is no necessity they should all be considered and decided by this court. There is an objection to the prayer offered on behalf of the defendants below that is perfectly conclusive of the case. Were it admitted, *ex gratia argumenti,* that such a right, as is claimed, to flow the land of the plaintiffs, could pass by a parol license, and that there was proof in the cause from which the jury could properly find such license, yet, the prayer is defective in this: it substantially requires some act of interruption to have been performed by some one or more of the owners of the property on which the water is backed, other

Carter and Lewis, *vs.* Harlan, *et al.*

than the institution of the suit or the sale of the *locus in quo*, since the dam under the assumed license was erected in 1828. We consider the license to raise the dam, if any such existed in 1828, as what is known as *executory*, as contradistinguished from an executed license, and as such revocable. That the license relied upon in this case was revocable, is conceded by the counsel of the defendants, but he insists, that this revocation should have been a positive act accompanied by notice to the defendants. In this opinion we cannot concur. The dam was erected in 1828, and the license, if any, extended only to the fact of erection. When Harris, who was then the owner of the land, now belonging to the plaintiffs, disposed of and conveyed it away, such disposal and conveyance, *ipso facto*, by mere operation of law, amounted to a revocation of the license ; and so likewise with all the subsequent sales of it, until the plaintiffs in this action became seized of it. To use the language of Chief Justice Parker, in the case of *Cook vs. Stearns*, 11 *Massachusetts*, 536, "If the defendant had a license from the former owners of the plaintiff's close, to make the bank, dam and canal in their land, this extended only to the act done, so as to save him from their action of trespass for that particular act; but it did not carry with it an authority, at any future time to enter upon the land. As to so much of the license as was not executed, it was countermandable ; and transferring the land to another, or even leasing it without any reservation, *would of itself* be a countermand of the license." The same doctrine is most explicitly recognized and decided, in the case of *Wallis vs. Harrison & others*, 4 *Meeson & Welsby*, 543. In that case Lord Abinger, speaking of the necessity of notice, remarks : "I never heard it supposed, that if a man out of kindness to a neighbor allows him to pass over his land, the transferree of that land is bound to do so likewise. But it is said, that the defendant should have had notice of the transfer. This is new law to me. A person is bound to know who is the owner of the land upon which he does that which *prima facie* is a trespass." The distinction in the cases to

be found in the books consists in this : Where one is per-
mitted to do certain things on the land of another, and an
authority impliedly given to repair the thing erected in all
time, then the right must originate in *grant;* but where the
license only authorizes the doing of a single act, it is revo-
cable as to the part which has not been executed, and this, we
have seen, is the result of a sale of the land.  We *of course*
put out of view all that class of cases where, because of a
license, a party has been put to an expense and outlay on the
land of the licensor.  In such cases equity interferes, and
exacts that the party making the improvement shall be
indemnified.

*Judgment affirmed.*

TUCK, J., delivered the following separate opinion, con-
curring with the rest of the court in the affirmance of the
judgment:

I am of opinion that the judgment below should be affirmed,
because, if all the matters stated in the prayer be taken as
true, and the parol license be found by the jury, as prayed
by the appellants, it was not sufficient to defeat the action.
The damage complained of is for overflowing the plaintiff's
land by the improper height of the defendants' dam.  This
they justify under a license from the former, and present own-
ers of the land.  I think that the right to overflow another's
land by a mill-dam, is an interest in land which cannot pass
by parol.  This was decided in *Hays vs. Richardson,* 1 *Gill
& Johns.,* 366, recognized in *Addison vs. Hack,* 2 *Gill,* 222.
See, also, 11 *Mass.,* 537, *Cook vs. Stearns.*