# IN GENERAL TERM.

ANDREW SMITH, Appellant, *v.* THE INDIANAPOLIS, PERU & CHICAGO RAILWAY COMPANY.

Appeal from BLAIR, Judge.

*Railroad—License to, and permissive use of lands by, how revocable— Contract, pleading on.*

Where the complaint does not aver that a contract is in writing, the presumption is that it was by parol.

Where parties living adjacent to a railroad track, made the grade, and furnished the cross-ties for a switch for neighborhood convenience, under a contract with the railroad company that the switch should remain permanently, &c.,

*Held:* That after the road, and franchises of the contracting company had been sold under a decree of foreclosure, the corporation purchasing the same might remove the switch, unless it assumed the original contract under Sec. 3 of the Railroad Act of March 3, 1865.

*Hanna & Knefler, R. E. Smith,* for appellant.

*Hendricks, Hord & Hendricks, McDonald, Butler & McDonald,* for appellee.

NEWCOMB, J.—The complaint in this case alleges that in the year 1859, the plaintiff, and divers other parties, contracted with the Peru & Indianapolis Railroad Company to grade, and furnish with cross-ties a switch, at the village of Vertland ; that the railroad company agreed that it would furnish the iron, and lay the track on said switch, and forever thereafter keep the same in repair, and that it should remain a permanent switch and shipping station, for the use of the parties so grading, and furnishing the ties, and for the public gen-

erally ; that the plaintiff and his associates fully performed the contract on their part, and that the Peru & Indianapolis Railroad Company laid the iron on said switch, and maintained and used the same as a shipping station until January, 1864, when the road and its franchises were purchased by the defendant at a sale made by the United States Marshal, on a decree of foreclosure rendered in the Circuit Court of the United States, District of Indiana, in the year 1863; that the defendant took possession of the road, and the switch in question, under said purchase, and continued to use the switch for shipping purposes, and a way-station, with full knowledge of the contract between plaintiff and the Peru & Indianapolis Railroad Company, until June, 1870, when defendant tore up and destroyed said switch. It is further averred that by reason of the destruction of said switch, the plaintiff has been deprived of a shipping station, and is put to great inconvenience in shipping away his stock, cattle, horses, hogs, sheep, and grain, and is deprived of the means of having products brought to, and delivered at said switch which was situated near and convenient to plaintiff's farm ; that his interests in that behalf are separate and distinct from those of all other persons, and that by reason of said alleged wrongful act of the defendant, he has suffered great injury to his damage, &c. A demurrer was sustained to this complaint, and final judgment rendered for defendant to which the plaintiff excepted, and appealed to the General Term.

The complaint does not aver that the contract between the plaintiff and the Peru & Indianapolis Railroad Company was in writing. The presumption is, therefore, that it was by parol—*Harper et al* v. *Miller et al*, 27 Ind., 277. It does not aver that the contract was made, and the switch built prior to the execution of the mortgage, nor that the mortgagee, at the time of its execution had notice that plaintiff claimed an interest in the switch. Neither does it

aver that the switch was located on the lands of the plaintiff.

The plaintiff bases his claim on the proposition that, inasmuch as the defendant used the switch over five years after the purchase of the road at the Marshal's sale, and that the President of the Peru & Indianapolis Railroad Company became a Director, and the Superintendant of the Indianapolis, Peru & Chicago Railway Company, he having full knowledge of the contract between plaintiff, and the former Company, it must be presumed that the defendant adopted, and assumed the liability of the Peru & Indianapolis Railroad Company under the contract of 1859, with plaintiff and his associates.

By *Section* 3, of an Act of the General Assembly, approved March 3, 1865, entitled " An Act to authorize, regulate, and confirm the sale of railroads, to enable purchasers of the same to form corporations, and to exercise corporate powers, and to define their rights, powers, and privileges; to enable such corporations to purchase, and construct connecting and branch roads, and to operate and maintain the same," it is, among other things, provided that such company " shall have power, at any time after the formation of the corporation as aforesaid, to assume any debts and liabilities of the former corporation, and to make such adjustment, and settlements with any stockholder, or stockholders, creditor, or creditors, of such former corporation, as may be deemed expedient &c."

We think it a clear proposition that the contract of 1859, did not give the plaintiff any ownership in the switch at Vertland. The contract was a personal one entirely, which it was, indeed, competent for the defendant to assume, under the Act of 1865, but which he has not assumed in such manner as to give the plaintiff a right of action for the removal of the switch. In order to bind the defendant to the performance of the contract of 1859, made by the Peru & Indianapolis Railroad Company, we think there must have been a direct assumption of that contract by the

Smith v. The Indianapolis, Peru & Chicago Railway Company.

defendant. Such assumption can not be inferred from the use of the switch, which, for anything the complaint shows, passed unincumbered to the defendant by the Marshal's sale of January, 1864, fourteen months before the enactment of the statute of March 3, 1865.

During these fourteen months the defendant can not be held to have assumed the alleged liability of the former corporation, by reason of her use of a switch belonging to herself by virtue of the Marshal's sale, nor could a liability attach under the Act of 1865, except at the option and election of defendant.

The judgment at Special Term is therefore affirmed with costs.

NOTE.—It does not matter whether the license be by parol, or in writing, so long as it remains a mere license, not converted into a conveyance, grant, or contract, nor rendered irrevocable by estoppel, as, under some circumstances, it may be in equity, though not at law, it can not create or tranfer an interest in land. See English Cases, in 11 Meesson & Welsby's Reports, Ex, 848; 4 Manle & Selwin's Rep., K. B., 565; 4 East., 107; 5 Barnwell & Cresswell's Reps., 22; 8 Ib., 288; 11 E. C. L., 207; 15 Ib., 219. American Cases: 15 Wend., 384; 23 Conn., 214; 11 Mass., 533; 4 R. I., 47; 6 Md., 20.

A mere license affecting land is at law always revocable, even though granted for a valuable consideration. 4 East., 107; 3 M. & W., 833.

Usage connected with the granting of this sort of accommodation by the Railroad Company, will not justify the inference that a perpetual easement in this track was conceded. 11 Am. Law Reg., (N. S.), 374, 378.