## GEORGE A. SHIPLEY *vs.* CHARLES E. FINK.

*Parol License to Use Another's Land—Revocation—Rights of Purchaser—Notice from Possession of Land—Specific Performance—Injunction Against Tearing Down Building.*

When a bill for specific performance alleges that a defendant agreed to *give* certain land, that may be construed as alleging an agreement to *convey,* and a demurrer to the bill, on the ground that it alleges a mere promise to give, is properly overruled.

A parol license given by the owner of one parcel of ground to the owner of an adjoining parcel to erect a wooden structure partly on the former

lot, creates no interest in the land, but is revocable, and a conveyance of the land belonging to the licensor to a purchaser without notice revokes the license.

A permanent right to use the land of another cannot be created by a parol license, but such interest in land is required by the statute to be granted by deed.

The rule that possession of land is notice to the purchaser thereof of the rights of the party in possession is only applicable to a case where the possession is under a claim of title to some estate in the land, which may be established by proof, and does not apply when the possession is under a parol license subject to revocation by the owner of the land, and which is in fact revoked by a conveyance thereof.

When the owner of land allows another to expend money in the erection of a structure thereon under a parol license, he cannot revoke the same without making compensation. But the purchaser of the land without notice of the rights of the licensee may revoke the license without compensation.

When a Court of equity has once acquired jurisdiction of a cause it will retain the same in order to do full and complete justice between the parties with respect to the subject-matter.

A and B were the respective owners of lots with houses thereon, A's house being about five feet from the dividing line between the two properties and B's house about three feet from said line. A's tenant was about to erect a wooden structure for use as a shop on his lot running up to the dividing line and back therefrom past the window of B's dining-room when B orally agreed that if A's tenant would not build in front of said window he might use the three feet of B's lot and build over the same and against the wall of B's house. The structure was made in accordance with this agreement. Afterwards B's property was conveyed to the defendant, the deed making no reference to this easement. Upon a bill to restrain defendant from tearing down said structure on his lot and for specific performance of B's alleged agreement to convey the said three feet covered by the structure, *held,* that since the evidence fails to show that B ever promised to convey the land, or that the agreement between the parties was anything more than a license to use the same, A is not entitled to demand a conveyance.

*Held,* further, that the defendant should be enjoined from tearing down the structure until the plaintiff has a reasonable opportunity to remove the same from defendant's lot without unnecessary injury thereto.

Appeal from the Circuit Court for Carroll County (THOMAS, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Jas. A. C. Bond* (with whom were *Ivan L. Hoff* and *F. N. Parke* on the brief), for the appellant.

*Charles E. Fink,* appellee, *in propria persona.*

PEARCE, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Carroll County enforcing specific performance of an alleged contract for the conveyance of real estate.

Charles E. Fink and Henry B. Reigel in the year 1899 were owners of adjoining properties in the town of Westminster, the property of Mr. Fink being then in the tenancy of John T. Thompson, since deceased. Both these properties were improved by brick dwellings, that of Mr. Reigel being three feet and three inches south of the dividing line between the two properties, which line ran at right angles to Pennsylvania avenue upon which the lots fronted, and the dwelling upon Mr. Fink's property being about five feet from said dividing line. Thompson, desiring to go into business as a butcher, arranged with his landlord for the erection of a meat shop upon the space between his dwelling and the said dividing line, to stand upon said line, and to run back to the rear of Thompson's dwelling where it was to be widened so as to give additional room and convenience for the business. This would have darkened the dining-room window of Reigel's property, and upon discovering this fact, Reigel, as the plaintiff alleges in his bill, "earnestly solicited the plaintiff not to extend said building so far back as to interfere with the light to his said window, and offered to give the plaintiff the land between Reigel's house and the dividing line, from the west side of said dining-room window to Pennsylvania avenue, and the use of the wall on the north side of his said house for the same distance * * * provided the plaintiff would not erect a building on said line of division, opposite said window, so as to cut off or interfere with the light to said window, which offer was accepted by the plaintiff," who in consequence changed the plan of said building accordingly, "and the plaintiff took immediate possession

of said strip of land, and said building was immediately erected in accordance with said agreement, upon the space between the two said houses and against the wall of said Reigel's house, the dimensions of said building being about eight and a-half feet wide by twenty-one and a-half feet deep, and not extending further back than the western edge of said dining-room window."

Reigel died in November, 1900, and his said house and lot was sold in February, 1903, under a decree of the Circuit Court for Carroll County, and was conveyed by the trustees under said decree to the purchaser, the defendant, being described in the advertisement as containing one-fourth of an acre, more or less, without giving the lines, though at the sale it was stated to front on Pennsylvania avenue 60 feet with a depth of 198 feet, and being conveyed to the defendant by metes and bounds conforming to said statement, and being designated in said deed as Lot No. 3 of Hopper's Addition to Westminster, the plaintiff's lot being Lot No. 4 of Hopper's Addition. No reference was made in the advertisement, or at the sale, to the said meat shop or to any agreement or understanding under which the same was built partly upon Reigel's land.

The defendant demurred to the plaintiff's bill, and the Court overruled the demurrer. We think this ruling was correct. Upon demurrer, a bill should not be dismissed, if, by any reasonable construction of the language of its averments, a case is stated entitling the plaintiff to the relief sought, and we think the allegation of an agreement "to give the land" may be construed as an allegation of an agreement "to convey the land," under which proof may be offered of such an agreement. Upon the overruling of the demurrer, the defendant answered, denying the alleged agreement between plaintiff and Reigel; averring that he was a *bona fide* purchaser for value without notice of any claim of the plaintiff, and that plaintiff stood by and saw said property sold, without setting up any claim. He also relied upon the Statute of Limitations and the absence of any written contract or deed, and admitted

that after giving notice to plaintiff to remove that part of said building which was erected upon his land, and plaintiff's failure to comply with said notice, he began to tear down and remove said part of said building as alleged in plaintiff's bill, until stopped by the injunction issued thereunder.

We have carefully examined the testimony to determine if it will warrant us in finding an agreement to convey the land, and will briefly state the substance of the evidence upon this question.

Mrs. Thompson, the widow of the tenant of Mr. Fink's property, says that her husband went to Reigel and told him in her presence that he was too ill to keep up his trade ; that he was going to put up a meat shop on the demised premises with his landlord's consent, and stated how the building would be located, and that he did not want Reigel to think hard of him ; that Reigel said "Don't do that, if you pass my dining-room window it will darken my room. Take my ground John, I will give it to you, but don't run it past my window;" that her husband said he would see Mr. Fink about it, and afterwards told Reigel Mr. Fink said it was all right, and he should go ahead and build the shop, which he did, and that Mr. Fink allowed him for the labor and material out of his rent ; that nothing was said as to when Thompson was to remove the shop, or for what period of time he was to have the land.

James H. Thompson, a son of John T. Thompson, said his father told Reigel he was going to put the building on the line and run it back, and Reigel said, "Don't do that.   Put it on my land, but don't run it back further than my dining-room window;" that there was nothing said as to the time his father should have the land, only "I will give you this land for your shop, but don't run it past my window;" that his father said he would see Mr. Fink, and later told Reigel Mr. Fink said, "All right, go ahead and build your shop."

Mrs. Sheeler, who lived next to Reigel, says Reigel told her they were going to build a butcher shop on the avenue and it would be handy, and that "he gave him the *right of way, the privilege* to put the building partly on his land."

Mr. Whitmore, who lived opposite to Reigel, says that while the shop was being erected Reigel told him that he told Thompson if he would not go past his dining-room window "he might have that space," but he did not say how long he was to have it.

Mr. Bankert, a near neighbor, says Thompson told him he was going to have an opposition to Whitmore, and just then Reigel came up and said the ground was no use to him, and he would rather have Thompson build there, but there was nothing said about deeding the land or how long Thompson was to have its use.

Mr. Wymert, another neighbor, says that when the lumber was on the ground, Reigel said he had told Thompson that if he would not go past his window "he could use his wall as one of his side walls, he could put up the building there, and he would never give him any trouble."

Mr. Fink testified that Thompson informed him "that Reigel said he would give the entire space between his brick house and the southern line of my lot, and the use of the wall of his brick house, if the building was not extended further back from the avenue than the nearest window to said avenue which was his dining-room window," and that he accepted the proposition, and the building was erected accordingly. He did not state there was any offer to convey the land, or any reference by any one to a conveyance, and there is nothing in the record to show that there was any personal communication upon this subject at anytime, between Reigel and Mr. Fink.

There was no other testimony relating to the agreement or understanding as to the erection of the building upon Reigel's land, and we do not think that which we have stated affords the character or degree of proof required to justify a decree for the conveyance of the land in question which is the specific relief sought by the bill.

"Specific performance is never a matter of right, and always rests in sound judicial discretion, controlled by established principles of equity. The contract sought to be enforced must be so clearly proven as to satisfy the Court that it constitutes

the actual agreement between the parties." *Horner* v. *Woodland*, 88 Md. 512. "Its terms must not be ambiguous; they must be accurately stated in the bill, and the proof must correspond therewith so as to leave no room for reasonable doubt." *O'Brien* v. *Pentz*, 48 Md. 577. And in contracts for the conveyance of land, the contract alleged must be established by clear, satisfactory and convincing proof. 26 *Enc. of Law*, 2 ed. 131.

So far as appears from the record, Mr. Fink never exchanged a word with Reigel on this subject, and he does not say that Thompson in reporting to him Reigel's proposition, represented any agreement for a conveyance. No one of the five witnesses who testified to the arrangement between Thomson and Reigel, referred to any such agreement. Bankert says there was nothing in the conversation he heard about deeding the land. Mrs. Sheeler says Reigel told her he gave Thompson "*the right of way, the privilege to put the building on his land,*" and Wymert says Reigel told him he told Thompson "he would never give him (Thompson) any trouble." There is a very material difference between an agreement to allow the erection of a building by another upon one's land, and a contract to convey the land to that other, or as in this case to a third party; between a parol license for an easement in land, and an agreement to convey the land in which the easement is to be enjoyed. If Reigel intended to bind himself to execute a deed to Mr. Fink for this land, it was unnecessary and meaningless for him to assure Thompson he would never give him any trouble. But this assurance was entirely consistent with the purpose of allowing the use of the land to Thompson so long as he continued the tenant of Mr. Fink. and his declaration that he had given Thompson the right of way, the privilege, was consistent with the same purpose; but both were inconsistent with a purpose or obligation to convey the land to Mr. Fink.

Such evidence, whatever may have been Mr. Fink's understanding of the proposition as reported by Thompson, cannot be accepted by the Court as clear and convincing proof of an

actual agreement on Reigel's part for a conveyance of the land, without which understanding on Reigel's part, the alleged contract lacks the essential element of mutuality, and is marked by an ambiguity as to the subject of the agreement, from all shade or color of which, as was said in *Dixon* v. *Dixon*, 92 Md. 438, the contract must be free.

Nor is there a word of evidence from anyone, that Reigel required of Mr. Fink a "covenant not to erect any building or buildings on his land opposite the dining-room or kitchen windows of the defendant's house which could or might darken either of said windows or obstruct the light thereof." Reigel's only requirement was that the particular building which Thompson was about to erect for his own use and convenience should not go beyond his dining-room window, and the requirement by the decrees of the covenant on Mr. Fink's part to be inserted in the deed, goes beyond the specific performance of any term of the contract established by the evidence, and is the introduction of a new term not agreed upon by the parties. All that we find to be established by the evidence in this case, is a parol license from Reigel to Thompson to enjoy an easement in his land and the wall of his house.

In *Cook* v. *Stearns*, 11 Mass. 532, the Court said, "A license is technically, an authority given to do some one act, or series of acts on the land of another without passing any estate in the land. But licenses which in their nature amount to granting of an *estate*, for ever so short a time, are not good without deed. The distinction is obvious. Licenses to do a particular act, do not in any degree trench upon the policy of the law (which is the same in Maryland as in Massachusetts in this respect) which requires that bargains respecting title or interest in real estate shall be by deed or in writing. They amount to nothing more than an excuse for the act which would otherwise be a trespass. But a permanent right to hold another's land for a particular purpose is an important interest which ought not to pass without writing, and is the very object provided for by our statute." In *Houston* v. *Laffee*, 46 N. H. 507, where a lead pipe to convey water had been laid in defend-

ant's land under a verbal license from a former owner, and defendant cut the pipe, the Court said, "A parol license to do a certain act, or a series, or succession of acts on the land of another, does not convey any interest in the land, but simply a privilege to be exercised on the land. It has been held that where a license like the one in this case has been given to plaintiff to enter upon defendants land and do acts which involved expenditure of money, and the license becomes executed by an expenditure incurred, it is irrevocable on the ground that a revocation under such circumstances would be fraudulent or unconscionable. But we think the later decisions sustain the doctrine that the license is in all cases revocable, so far as it remains unexecuted, *or so far as any future enjoyment of the easement is concerned;* for to hold otherwise, would be giving to a parol license the force of a conveyance of a permanent easement in real estate, and no such right or interest in real estate can be created by parol."

In *Hays* v. *Richardson*, 1 G. & J. 383, 384, it was decided that an easement to be used in the land of another (in that case a road and bridge) can only pass by a deed acknowledged and recorded, and the Court referred with approval to *Thompson* v. *Gregory*, 4 Johns. 81, in which the Supreme Court of New York (of which KENT and SPENCER were Judges), held that a right to overflow the land of another, by the erection of a mill dam, was an incorporeal hereditament which could be transferred by deed only, and not by parol permission to use it; and that if it were otherwise, the assignment of such an interest, since the statute of frauds, must be in writing.

The same was decided in *Carter* v. *Harlan*, 6 Md. 27–29; where JUDGE LEGRAND cited *Cook* v. *Stearns, supra,* and *Wallis* v. *Harrison,* 4 Mees. & Wels. 543, and said, "When Harris, who was then the owner of the land now belonging to the plaintiff, disposed of and conveyed it away, such disposal and conveyance *ipso facto,* by mere operation of law, amounted to a revocation of the license; and so likewise with all the subsequent sales of it until the plaintiff in this action became seized of it."

It is true, as contended by the appellee, that the fact of the possession of a party whose rights are involved in a purchase, is a sufficient intimation of his rights to put the purchaser upon inquiry into the nature of those rights, and that failing to make it, he is, in equity, visited with all the consequences of a knowledge of the plaintiffs rights. *Baynard* v. *Norris,* 5. Gill, 483; *Duval* v. *Wilmer,* 88 Md. 66. But this doctrince is only applicable to a case were the possession is under a claim of right or title to some *estate* in the land, which is established by proof, and not where there is a mere easement under a parol license which is subject to revocation at the will of the licensor, and which, as declared, in *Carter* v. *Harlan, supra,* is in fact revoked by sale and conveyance, as in this case.

It follows from what we have said that the decree appealed from which requires a conveyance by the appellant of the strip of land in question and which makes perpetual the preliminary injunction restraining the appellant from destroying or interfering with said building must be reversed It does not follow however upon the facts of this case that the injunction should have been dissolved at once. When a Court of equity has once acquired jurisdiction of a cause, it will retain such cause in order to do full and complete justice between the parties as far as possible with respect to the subject-matter. *Pomeroy on Contracts,* sec. 474.

Accordingly if Reigel, the licensor, were still the owner of the land, and the defendant in this suit, he would not be allowed to withdraw his consent and prevent the future use of the building erected for the enjoyment of the easement, without making compensation to Mr. Fink, and the Court would retain the bill to enable it to ascertain and decree a just compensation, in order that he should not be put to the trouble and expense of a second suit in another tribunal. *Carter* v. *Harlan, supra; Green* v. *Drummond,* 31 Md. 84; *Addison on Torts,* 6 ed. sec. 310. This relief however cannot be granted against the appellant under the circumstances of this case.

But we think the evidence shows that the appellant acted with undue haste, in view of all the circumstances, in starting

to tear down and destroy that part of the building on his land, at the time he did so.   The testimony of both parties shows that at that time the removal of the building was a subject of negotiation between them, Mr. Shipley requiring either that it be removed, or an agreement made for payment of rent for the land on which it stood.   While this discussion was in progress, Mr. Shipley served a written notice on Mr. Fink November 28th, 1903, requiring him to remove the building on or before December 3rd, 1903.   Mr. Fink testifies that they had previously agreed to meet on the premises on December 5th, 1903, at 4 P. M. to adjust the matter, an earlier meeting being impracticable owing to the pressure of his professional engagements, and that he went there at 4 P. M. and found that Mr. Shipley had begun to tear the building down before two o'clock, but was not then there.   Mr. Shipley denies this agreement.

Without however undertaking to reconcile their testimony, we are of opinion that under all the circumstances of the case Mr. Fink was entitled to a reasonable opportunity to remove the building without unneccessary injury to it, and that the notice given, in view of all the facts was not such reasonable notice.   The proper course, in our opinion, would have been to retain the bill and continue the injunction for such period as would in the judgment of the Court enable Mr. Fink to remove the building from Mr. Shipley's ground without unnecessary injury thereto, and we are of opinion that ten days will be a sufficient period therefor.

> *Decree reversed, and cause remanded that a new decree may be passed in conformity with this opinion.   The costs above and below to be paid equally by the appellant and the appellee.*

(Decided November 23rd, 1905.)