# CHARLESTON.

## W. W. RAMSEY, TRUSTEE, v. P. J. REID.

Submitted January 14, 1919.    Decided January 21, 1919.

LICENSES—*Revocation—Effect—Removal of Structures or Movables.*

> Though a license conferring rights over the land of another, accepted and acted upon in good faith, may be revoked at the option of the licensor, the revocation effects only a discontinuance of the right to the future exercise and enjoyment of the privilege, and does not, in the absence of facts or circumstances indicating a contrary intention, prevent the licensee from removing structures or other movable articles placed thereon by him in reliance on the license, especially where such right has been recognized by the licensor, provided he causes the removal within a reasonable time after the revocation.

Error to Circuit Court, Tucker County.

Detinue by W. W. Ramsey, Trustee, agaist P. J. Reid. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*A. R. Stallings, D. E. Cuppett* and *Chas. D. Smith,* for plaintiff in error.

*Melvin G. Sperry, D. H. Hill Arnold* and *A. Jay Valentine,* for defendant in error.

LYNCH, JUDGE:

Plaintiff sued in detinue to recover possession, if it can be had, and if not, the value, of steel railroad rails, and obtained the judgment which defendant seeks to reverse. Rulings upon the admissibility of testimony admitted, instructions given, the statute of limitations pleaded, and the right of the plaintiff to a judgment on the merits of the cause of action averred in the declaration form the basis of the writ.

The Clover Run Lumber Company, owner of a large boundary of timber land in Tucker County, entered into negotiations with Welch Brothers of Gowanda, New York, owners of a neighboring or adjoining tract, for the purpose of acquiring a right of way through it for a railroad for the transportation of lumber manufactured from the timber on

the lumber company's land for shipment to market over the railroad of the West Virginia Central Railroad Company, now owned and operated by the Western Maryland Railway Company. To establish the grant of such right or privilege to construct and operate the lumber railroad over the Welch Brothers' land, that being a fact material to a correct determination of the issue raised by the pleadings, plaintiff over objection was permitted to and did introduce in evidence two letters, the body of each of which, and the signature of Welch Brothers, and the initial "T. F. W." or "T. F. Welch," thereto subscribed were typewritten. The letters apparently were written at Gowanda, New York, on July 17 and 26, 1902, mailed where written, and addressed to L. Hansford, attorney at law, Parsons, W. Va., the county seat of Tucker County. Hansford and Welch brothers died before the trial of the action and of course did not testify.

The letters, it is true, were part only of the correspondence between Welch Brothers and Hansford for permission to use the land owned by the former in the manner indicated, the ground of the objection to their admissibility being the failure of the plaintiff to introduce all of the correspondence on that subject. The first letter introduced purports to be a reply to a request in writing by Hansford, acting presumably for the Clover Run Lumber Company, for a statement of the conditions upon which the grant of the right of way would be given or could be secured, and the second to explain or offer some modification of the conditions embodied in the first.

Omitting the formal and unnecessary portions, the July 17th letter says: "We will give the parties of whom you speak, if they wish it, the right or (of) way to build a tram road across our land on the following conditions: They are to cut as little timber as possible in laying their tram, and they to pay us the full value in cash for all timber cut; they also to pay any damage done to the land; second, they are to allow us or our assigns to use the tram road at any time on fair terms, and if they refuse to do so, we are to cancel the right of way. After they have finished with the tram road, the same is to remain on the land for our use until we remove our timber. We think that this will prob-

ably be satisfactory, as we certainly mean it to be fair. If they wish to build the tram, please advise us."

The second says: "We have your favor of the 23rd inst. The objection to the terms of the right of way which you mention is a good one. We would hardly expect them to leave such a road as you say they are going to lay there, after they finish, for an indefinite length of time. We would like to have the privilege of using it for a reasonable length of time, which we no doubt can agree upon."

The genuineness of the letters and authenticity and competency as proof seem to be attested and established fully and completely by what subsequently was done pursuant to the negotiations, and upon the faith and belief implied in and based upon them, and from the fact that Welch Brothers consented to permit the use of their lands for the construction and operation of the road, and that if Hansford did not disclose the name of the person or client in whose behalf he wrote the letters, replied to by Welch Brothers, acts later done identified the Clover Run Lumber Company as the applicant for the right of way. It built the road over its own land and over other land severally owned by Welch Brothers, Dasher, Williams and Phillips to intersect with the road of the Western Maryland Railway Company at or near Parsons, with which it obtained switch connection; and began and continued to operate the railroad over all the tracts of land mentioned for the transportation and delivery of lumber manufactured by it from the timber on its lands until in March, 1905, when it sold and conveyed all its property, real and personal, in Tucker County, including the saw mill, equipment and appliances of every kind and description, and the railroad and railroad rights of way, to the Snowden-Gardner Lumber Company; and as did this company also during several years thereafter, and until plaintiff acquired the property, as hereinafter set forth.

In 1906 Welch Brothers sold and conveyed to J. M. McLaughlin the tract owned by them over which the railroad was built and operated, and also another tract not involved in this action. The deed of grant after describing the tract first mentioned as being in Tucker County, West Virginia,

contains this paragraph: "This conveyance of the above described tract is made subject to a right of way across the same heretofore given to the Clover Run Lumber Company for a railroad upon terms and conditions, but all the rights of the parties of the first part under the agreement for said right of way are hereby conveyed to the party of the second part hereto." By the express terms of this deed McLaughlin acquired the property subject to the right of way across the same, but he was also granted the privilege mentioned in the correspondence on the part of Welch Brothers as shown by the two letters admitted in evidence, that is, the right of Welch Brothers and their assigns to use the railroad so constructed and operated in hauling the lumber cut from the timber on the Welch Brothers' tract to the Western Maryland Railway for shipment to market, for which use the lumber road was to remain a reasonable time after the Clover Run Lumber Company or its assigns should complete their lumber operations.

Another significant fact bearing upon the same question is the action of Welch Brothers to recover of the Clover Run Lumber Company for damage done and timber removed by them in the construction of the road in violation of the agreement, for which by way of compromise the Clover Run Lumber Company paid to the plaintiff therein $338. Another confirmatory circumstance of the same general character is that after McLaughlin had acquired Welch Brothers' title, and after the plaintiff in this action had acquired the title to the land and equipment formerly owned by the Clover Run Lumber Company, McLaughlin sold the timber on the Welch tract to Wildman, who applied to the plaintiff and was given the right to use the railroad over the Welch tract to haul the timber cut by him thereon to the main line of the Western Maryland, thus recognizing plaintiff's ownership and control of the railroad rails, the latter being the subject matter of this action. Wildman availed himself of the right given by the plaintiff, and before this cause of action arose had completed the cutting and hauling of the lumber sold to him by McLaughlin.

As still further establishing the genuineness of the let-

ters referred to before and the connection of Hansford and the Clover Run Lumber Company with them, there is the letter of Welch Brothers to A. J. Valentine, the attorney who represented them in the sale of their tract to McLaughlin. It is dated November 10, 1906, and was in reply to a letter written by Valentine to them asking concerning the rights of the Clover Run Lumber Company over the tract. In it they say: "There was no former (formal) contract for right of way with the Clover Run Lumber Company. We simply gave them by letter the right to run their railroad over the land to remove their timber, they to cut as little timber as possible in doing it, and to pay for all timber cut in doing it, to pay us all damages, and we to have the right to use the railroad in getting off our timber on fair terms, but they were not obliged to let their railroad remain after done with it. You can get the letter from Mr. Hansford." These facts seem to foreclose any and all questions that might arise as to the grant of the permission or privilege, if not a right of way, over the Welch tract, the nature and character of which is reserved for later discussion.

The title to the property, real and personal, of every character and description owned by the Clover Run Lumber Company, including the rails in dispute, all of which the latter had conveyed to the Gardner-Snowden Lumber Company, March, 1905, for which it executed its notes for the deferred payments, plaintiff acquired through the decrees of sale and confirmation entered in a suit in which he was the plaintiff to enforce the lien reserved in the deed, and at which sale he became the purchaser, and the commissioner appointed to sell and authorized to convey the property executed to him a deed June 20, 1908. This deed granted the land, the buildings thereon, saw mill, lumber, tools, appliances, improvements, and specifically "the railroad extending from the Western Maryland Railroad near Parsons to the saw mill located on said land, with the appliances, locomotives and everything belonging thereto or used in connection therewith, with all rights of way used in connection with said railroad, or belonging to the Clover Run Lumber

Company or the Gardner-Snowden Lumber Company, and all property of every kind and character whatsoever belonging to. the said Clover Run Lumber Company or to. the Gardner-Snowden Lumber Company, and by the decree of sale hereinbefore referred to decreed to be sold.'' Thus the plaintiff became vested with the title to every item of property owned and used by either of the two companies named in the deed to him; and, what is important now, the right, whatever it may properly be demoninated, to operate the .railroad over the Welch Brothers' land, or, if not to operate it, the right to remove the rails used in its construction, unless, as the defendant contends, that right has since been lost because of the statutory bar.

The statute of limitations has not and cannot have any application to the facts proved. McLaughlin took title to the land acquired by him with full knowledge and notice of the existence of the railroad thereon, a visible encumbrance on the property, and with the information imparted by the Welch Brothers' deed that he took it subject to the Clover Run Lumber Company's right of way, though he acquired Welch Brothers' right therein, i. e., the right to use the same upon fair terms. *Pocahontas Tanning Co.* v. *St. Lawrence Boom & Mfg. Co.,* 63 W. Va. 685. McLaughlin's vendee of the timber obtained from the plaintiff the right to use the railroad, and did use it to haul the lumber manufactured from the timber purchased by him to the railroad for the purpose of further transportation to market, and such use continued until well within the statutory period.

Nor has there been an abandonment of the lumber road by the plaintiff or by those through whom he derived title to the property, since which time he has always asserted a right to its enjoyment, and through his agent, McDonald, kept it under his surveillance, protection and dominion.

There is some discussion as to the effect of the right conferred upon the Clover Run Lumber Company to use the lands of Welch Brothers for the purpose of the construction and operation of a lumber road, a road owing no duty to the public, a mere private way to haul lumber; that is, whether the grant or concession of the right created an easement or constituted a license only. It has some and does

not have other characteristics of an easement, although the parties evidently so considered it. It was described as a right of way in the deed to McLaughlin' and in the decrees in the chancery cause referred to; and in the deed to the plaintiff; and it may be, but we do not say, because not necessary, that the doctrine of estoppel applies. The right, however, seems also to partake of the nature of a license or of a mere temporary privilege to be exercised for a particular purpose subject to termination when that purpose is accomplished. Indeed, the difference between an easement and a license is subtle, shadowy and elusive. Whether the one or the other, this much is beyond cavil or dispute; the right given was accepted apparently and acted upon in good faith by the Clover Run Lumber Company, and in pursuance thereof it made expensive outlays preparatory to the performance of the intended service, and when so prepared used it with the knowledge and acquiescence of the landowners and their privies in title, and by some of the latter permissively, until the defendant at the direction of McLaughlin removed and sold the rails in question.

Even if plaintiff's rights over the Welch tract constituted merely a license, a question which we do not decide, the rule that a licensee is entitled to remove his property and a reasonable time within which to cause its removal seems well settled. A license may be revocable at the option of the licensor, but the revocation effects only a discontinuance of the privileges granted by the license so far as their future exercise and enjoyment are concerned, and does not prevent the licensee from removing structures or other articles of value which he has constructed or placed on the land in reliance on the license, in the absence of facts or circumstances indicating an intention that the structures or articles should not be removed, especially where the licensee's right to remove has been expressly recognized. *Fischer* v. *Johnson,* 106 Iowa 181; *Watson* v. *Empire Engineering Corp.,* 77 Misc. 543, 137 N. Y. Supp. 231; *Dame* v. *Dame,* 38 N. H. 429; *Shipley* v. *Fink,* 102 Md. 219, 229; *Pitzman* v. *Boyce,* 111 Mo. 387, 398; *G. F. W. W. Co.* v. *G. N. Ry. Co.,* 21 Mont. 487, 504. In *Putnam* v. *State,* 132 N. Y. 344, the

court required compensation to the plaintiff for an injury to his property by acts amounting to the revocation of a parol license, the court saying: "He was entitled to reasonable notice and opportunity to remove the boats, and unless it appeared that in some way he had waived or surrendered such rights, he had a valid claim for damages against the state."

In view of all the circumstances detailed, the expenditures occasioned by the exercise of the permission granted, the compensation rendered, the benefits accruing to McLaughlin and to his assignee of the timber in that the road afforded an available means to convey it to the railroad and thence to market, an opportunity which doubtless enhanced the value of the land and timber, his failure to revoke the license, if revocable, and give notice of the revocation, and the fact that the right to remove the lumber road is expressly recognized in the letters to Hansford, we are of opinion that the judgment is so clearly right that it ought to be affirmed, notwithstanding the peremptory instruction of which defendant complains withdrew from the jury the main fact of ownership, and left for their determination only the question of value.

Judgment affirmed.

*Affirmed.*