# NORTHERN CENTRAL RAILWAY COMPANY *vs.* THE CANTON COMPANY OF BALTIMORE.

*Construction of a Lease to a Railroad Company — Right to Lay Tracks Across Streets Owned by Lessor—Injunction Requiring Removal of Tracks Placed Without Authority—License.*

In 1873, the Canton Company owned a large tract of land adjoining Baltimore City and fronting on deep water. A number of streets and avenues were designated on the map of the land but few of them were opened or used. The Union Railroad Company constructed a railway from a point in the city to the land of the Canton Co. with several branches. When such was the situation of the property, the Canton Company leased to the Northern Central Ry. Co. for ninety-nine years a number of the lots as designated on the map. Twelfth avenue as there designated ran between one part of the land leased situated on the water front and another part. The lease provided that the Northern Central Ry. Co. should have the right to lay tracks on certain streets and avenues and make connections with the Union Railroad, and that none of the streets and avenues laid down on the plat should be open through the ground leased except C street, Twelfth avenue and Tenth avenue. The lease gave an express right to lay tracks on Eleventh avenue but gave no right to lay tracks across Twelfth avenue. The Railway Co. built an elevator and ore pier on the water and connected the same with its road by building five sets of tracks across Twelfth avenue. In 1906, that company constructed ten additional tracks across Twelfth avenue. Upon a bill by the Canton Co., for an injunction to restrain the construction of the tracks and to compel their removal, *held*, that all the trackage rights of the Railway Co. over the streets of the Canton Co.'s property were precisely defined in the lease, and the Railway Co. has no right to lay tracks except upon the streets mentioned in the lease, and that under the lease, the Railway Co. had no right to lay tracks across Twelfth avenue.

*Held*, further, that since the Railway Co. had laid five tracks across Twelfth avenue with the license or permission of the Canton Co. the latter company cannot now revoke the license and require the removal of those tracks without making compensation.

*Held*, further, that a mandatory injunction should issue, requiring the Railway Co. to remove the ten additional tracks placed across Twelfth avenue and that the right of the Railway Company to construct additional tracks there, must be acquired by comdemnation or agreement with the Canton Company.

When a Railway Company lays tracks without authority on plaintiff's land, a mandatory injunction requiring their removal will be issued.

When a Railway Company has laid tracks on certain land under a license from the owner, the licensor cannot revoke the license and require their removal without making compensation.

*Decided December 19th, 1906.*

Appeal from the Circuit Court for Baltimore County, (DUNCAN, J.)

The cause was argued before McSHERRY, C. J., BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Bernard Carter*, (with whom was *J. J. Donaldson* on the brief), for the appellant.

*Arthur Geo. Brown* and *Edgar H. Gans*, for the appellee.

BURKE, J., delivered the opinion of the Court.

On the first day of October, 1873, a lease was made between the Canton Company of Baltimore, a body corporate, and the Northern Central Railway Company, by which several tracts of land, comprising in all about seventy acres were demised by the Canton Company to the Railroad Company for the term of ninety-nine years, upon the annual rent of $15,000, payable in half yearly installments of $7,500 on the first days of April and October in each year during the continuance of the lease. The Northern Central Railway Company appealed from the decree of the lower Court, and the principal question which the appeal presents is this : Has the Northern Cen-

tral Railway Company the right, by virtue of that lease, to lay and maintain railroad tracks, to be used and operated in connection with its elevator No. 3 and its ore pier, across a certain avenue located upon the property of the Canton Company, and known as 12th avenue ?

Before the provisions of the lease are examined, the facts and circumstances which led to its execution must be considered, because they will afford valuable aid in the discovery of the intention of the parties and in fixing their rights under the lease.    The Canton Company, being the owner of large tracts of land located partly in Baltimore City, and partly in Baltimore County, caused the same to be platted.    In the plan of development, as shown by the plat, there are a number of streets and avenues.    The proposed streets were to run north and south, and the avenues east and west.    Clinton street, one of the most important, ran along the water front of the northwest branch of the Patapsco river, and in addition there were shown upon the map forty-four other streets running north and south.    The avenues, numbered one to thirteen inclusive, ran east through the property, beginning at Clinton street.    By far the greater number of these streets and avenues are only projections of plans made by the Canton Company, and have never been actually opened.    The evidence shows that, with the exception of Clinton street, the only street running north and south that has ever been opened is 14th street, and that of the avenues running east and west the only ones opened are First avenue to 14th street ; Fifth avenue to 14th street ; and 12th avenue to 14th street.

This property being admirably adapted, by reason of its location along the deep water of the Patapsco river, for manufacturing, shipping, and commercial purposes, the Canton Company early recognized the necessity of railroad facilities to foster and develop these industries, and accordingly it secured the incorporation and construction of the Union Railroad Company of Baltimore.    This road was incorporated by the Act of 1866, ch. 119, and was constructed chiefly by the financial assistance afforded by the Canton Company,

NORTHERN C. RY. CO. vs. CANTON CO.     685

Md.]                    Opinion of the Court.

which regarded it as an essential factor in the development of its large landed interests at Canton.  By the 9th section of the charter it was provided, "that the president and directors of said company shall be invested with all the rights and powers necessary to the construction and repair of a railroad from the point known as the Relay House on the Northern Central Railroad, by way of the Stoney river route, to tide water at Canton, together with any lateral road to the City of Baltimore, connecting therewith, with as many sets of tracks as may be deemed necessary, not exceeding sixty-six feet wide for the graded surface of said road or roads, and the said president and directors or a majority of them, may cause any contract or contracts to be made between said company, and any person or persons for the construction of a whole or any parts of said work, and said company or its agents may enter upon and use any lands required for the construction of said road, and its necessary and convenient buildings and equipments, and to take and use such materials as may be required for construction or repairs."   By section 12 it was declared, "that with reference to the condemnation of land and materials, construction of the road and all other matters not herein enumerated, the powers of said company shall be the same as those conferred upon the Baltimore and Ohio Railroad Company by its charter, and the supplements thereto."   The original charter was amended by the Acts of 1870, ch. 412.  By this Act the northern terminus, as fixed by the Act of 1866, was changed, and was declared to be at "a point connecting with the railroad of the Western Maryland Railroad Company at or near the northwestern boundary of the City of Baltimore, or from the eastern terminus of the tunnel to be constructed by the Baltimore & Potomac Railroad Company in the City of Baltimore, or from a point on the Northern Central Railway, at or near the Belvedere bridge, in said city, to tide water at Canton."

The Union Railroad Company selected as its northern terminus a junction with the Northern Central Railroad Company at Belvedere bridge in the City of Baltimore as provided

in the Act of 1870, ch. 412, and, under the auspices of the Canton Company, the road was practically completed to tide water at Canton in the year 1873. It is important to notice the location of the lines of the Union Railroad on the property of the Canton Company. After leaving Eager street, it runs into 9th street, Canton, with a number of branches leading to the water front west of Clinton street. There is one branch that leaves 9th street near Second avenue, and passes into 13th street, between 4th and 5th avenues, and runs south on 13th street to and across 11th avenue. At the time of its completion in 1873, there were practically no manufacturing or commercial interests established at Canton. The vast properties and shipping trade of the appellant company had no existence at that point, and while the want of proper terminal facilities at Canton had long been recognized as injurious to the traffic of the Northern Central Railroad Company, no definite plan of improvement had then been proposed.

The Union Railroad being now completed, and the Northern Central Railway Company desiring to avail itself of the opportunity thereby afforded for the establishment of its terminals on the deep water of the Patapsco and harbor of Baltimore entered into the lease of October 1st, 1873. Four pieces or parcels of ground are embraced in the lease, and are described as follows : "That is to say, for the first of said pieces or parcels: Beginning at the southwest corner or intersection of Clinton street and Sixth avenue, and running thence southerly, binding on the west side of Clinton street, seven hundred (700) feet; thence westerly, parallel to Sixth avenue, seven hundred and eighty (780) feet to the Port Warden's line ; thence northerly, binding on the Port Warden's line, seven hundred (700) feet to Sixth avenue; and thence easterly, binding on the South side of Sixth avenue seven hundred and eighty (780) feet to the beginning. For the second of said pieces or parcels; Beginning at the southeast corner or intersection of Clinton street and Sixth avenue, and running thence southerly binding on the east side of Clinton street seven hundred (700) feet; thence easterly parallel to Sixth

avenue, seven hundred and thirty-two (732) feet to Third street; thence northerly binding on the West side of Third street seven hundred (700) feet to Sixth avenue; and thence westerly binding on the south side of Sixth avenue seven hundred and thirty-two (732) feet to the beginning. For the third of said pieces or parcels: Binding on the south side of Twelfth avenue, from the east side of Tenth street easterly nine hundred and ninety-six (996) feet to the west side of Fourteenth Street and extending southerly from the south side of Twelfth avenue and between the east side of Tenth street and the west side of Fourteenth street to deep water. For the fourth of said pieces or parcels: Beginning at the northeast corner or intersection of Twelfth avenue and Twelfth street, and running thence easterly binding on the north side of Twelfth avenue four hundred and sixty eight (468) feet to Fourteenth street, thence northerly on the west side of Fourteenth street two thousand and twenty eight (2028) feet to Eighth avenue, thence westerly on the south side of Eighth avenue two hundred and four (204) feet to Thirteenth street; thence southerly on the east side of Thirteenth street fifteen hundred and eighty-four (1584) feet to the south side of Eleventh avenue, thence westerly on the south side of Eleventh avenue two hundred and sixty-four (264) feet to Twelfth stret; and thence southerly on the east side of Twelfth street four hundred and forty-four (444) feet to the place of beginning."

This property was leased for the purpose of being improved and used as the terminus of the Northern Central Railway Company, and in order to make it effective and adequate for that purpose it became necessary to provide for certain trackage rights over the streets and avenues of the Canton Company's property in connection with the tracks of the Union Railroad Company. That these provisions as to trackage constituted, in the opinion of the parties to the lease important and essential stipulations, cannot be doubted. In the very nature of the case it must have been so, and the carefully drawn provisions in the lease defining and limiting the rights of the Railroad Company in the streets and avenues, and the

undertaking on the part of the Canton Company not to open certain streets or avenues, indicate clearly that the minds of the parties were definitely and specifically directed to the consideration of such rights of trackage as were then deemed sufficient for the purpose of the terminus.   With regard to the Clinton street lots precise and definite provisions as to the use of the streets and avenues were made as follows : "Now in consideration of the premises, and of the covenants and obligations in this lease on the part of the Northern Central Railway Company, the Canton Company hereby covenants with the said Northern Central Railway Company, that it may without any interference on the part of the said Canton Company, make any connection which said Union Railway Company may agree to, by means of railroad tracks between the piece or parcel of ground first mentioned and above described, and the track of said Union Railway Company on Sixth avenue, at any points from Third street to and across Clinton street, and also between the said piece or parcel of ground with the track of the said Union Railroad on Seventh avenue where it crosses Third street, and also with the track of said Union Railroad, at any point on Third street, and also that it shall have the privilege of laying as many railroad tracks as it shall deem necessary, either at grade or on bridges across that part of Clinton street which runs through said piece or parcel of ground, but said bridges shall be so constructed as not to impede the use and traffic of said street.   And whereas, The said Union Railroad has acquired title to the bed of Thirteenth street from Eighth avenue to the south side of Eleventh avenue, which bounds on the west a portion of the piece or parcel fourthly above described, and has laid, or proposes to lay its tracks along said bed, the Canton Company further covenants with the said Northern Central Railway Company, that it may without any interference on the part of said Canton Company make any connections by means of railway tracks between said portion of said piece or parcel of ground, and the track or tracks of the Union Railroad Company, *bounding it on the west*, which may be agreed upon between

said Northern Central Railway Company and said Union Rail-
road Company, *and that said Northern Central Railway Com-
pany may lay two railway tracks on Eleventh avenue between
Twelfth and Thirteenth streets, for the purpose of connecting
said piece or parcel of ground with said Union Railroad on
Thirteenth street.*"

The provision of the lease as to the closing of streets and
avenues is as follows :   "And the said Canton Company of
Baltimore doth further covenant and agree with the said
Northern Central Railway Company and its assigns, that none
of the avenues or streets laid down on the plan or plat of the
said Canton Company's property through the pieces or parcels
of ground hereby leased, *except Clinton street, Twelfth avenue
and Tenth avenue,* shall ever be opened by said Canton Com-
pany, or its assigns, through the said grounds so leased, with-
out the assent of the said Northern Central Railway Company.
Nor shall any other streets or avenues be opened by said Can-
ton Company, or its assigns, through said property without
such assent; the said Canton Company hereby covenanting
and agreeing to abandon and close, and procure to be aban-
doned and closed, and hereby abandoning and closing all such
parts of said streets and avenues so laid down on said plans or
plats as pass through said property hereby leased, *except the
streets and avenues excepted as aforesaid.*"

We think it manifest from these stipulations that all such
trackage rights as were to be had by the Northern Central
Railway Company over the streets and avenues of the Canton
Company's property were expressly and precisely limited and
defined in the lease, and that it was also apparent that it was
the intention of the Canton Company to keep certain streets,
which were deemed essential to the development of its pro-
perty, opened and free from serious obstructions to travel.   It
would appear to have been of the utmost importance to the
Canton Company to have kept Twelfth avenue open as the
most convenient means of communication between its property
lying east and west of the property on Thirteenth street owned
by the Union Railroad Company and the fourth lot described

in the lease of October the 1st, 1873.    The right of the Northern Central Railway Company to cross Eleventh avenue was limited to the right to place two tracks thereon, and no right was given it to lay tracks across Twelfth avenue so as to connect lots numbered three and four.

When the provision of this lease as to the definite and specific rights of way across the designated streets and avenue are considered in connection with the then condition of the property, the situation of the parties, and all the surrounding circumstances, we think it reasonably certain that all the rights of way to which the Railroad Company was entitled were expressly and particularly stated in the lease, and that all the streets and avenues over which the Railway Company was not granted rights of way, or which were not to be closed by the terms of the lease, were to be left free and unobstructed.   This we think was the intention and understanding of the parties, as gathered from the language employed and from the circumstances under which the lease was made.    We therefore hold that, by the true construction of the lease of October 1st, 1873, the Northern Central Railway Company had no right thereunder to lay any tracks across Twelfth avenue connecting its elevator and ore pier with its tracks on the north side of said avenue.    To hold otherwise would be to say that it was the intention of the parties to grant this right, and that by the inadvertency of the parties the express grant was omitted from the lease.    Such an assumption is forbidden by the language employed, and, besides, it is difficult to conceive how such an omission could have escaped the notice of the learned and experienced counsel who had charge of the preparation of the lease, if it had been the intention of the parties that it should have contained such a provision.

Inasmuch as the minds of the parties were directed to the consideration of such easements as were then thought to be sufficient, and as the agreement reached upon that subject was definitely expressed in the lease, the failure to provide for a right of way across Twelfth avenue would seem to indicate that none was intended to be granted.    The thirty odd years

which have passed since the making of the lease have wrought great changes in the industrial situation at Canton, and have witnessed a marvelous development in trade and commerce in that section of Baltimore County. If present conditions are such as to make it reasonably necessary for the Railroad Company to lay additional tracks across Twelfth avenue, this right must be acquired either by condemnation, or by agreement with the Canton Company.

The construction of the lease contended for by the distinguished counsel for the Northern Central Railway Company is one which we cannot adopt, because it is based largely upon a consideration of conditions and circumstances existing nearly a third of a century after the making of the lease, and which cannot fairly be said to have been within the contemplation of the parties. Such a construction would unwarrantably vest in the Railroad Company rights in the bed of Twelfth avenue whose measure or extent are uncertain and variable, depending alone upon the question whether the number of tracks which it may see fit to place across Twelfth avenue are now, or may hereafter be reasonably sufficient for the efficient operation of the elevator and ore pier.

2. But it appears that many years ago the Northern Central Railway Company by the license, or permission of the Canton Company laid five sets of tracks across Twelfth avenue, and have ever since operated and maintained them—three in connection with the elevator No. 3, and two in connection with the ore pier. These tracks having been laid by the parol license of the Canton Company, that company cannot now revoke the license and require the removal of the tracks, without making full compensation.

It is unnecessary to state with any particularity the pleadings in the case. It will be sufficient to say that on the 16th day of May, 1906, the Northern Central Railway Company placed ten additional tracks across the bed of Twelfth avenue to be used in connection with Elevator No. 3, and also placed two movable switch points in the bed of Twelfth avenue to be used in connection with the tracks to the ore pier, claiming the

right to lay and maintain these additional tracks and switch points under the authority of the lease of October 1st, 1873, but expressing its willingness, at the expense of the Canton Company, to transfer the switch points from the bed of Twelfth avenue to the property of the Railway Company north of Twelfth avenue, upon a plan shown in the blue print filed with its answer.

A bill for a mandatory injunction was filed by the Canton Company requiring the appellant to remove the switch points and the additional tracks from the bed of Twelfth avenue. The case was heard upon the bill, answer, replication, and testimony, and on the 22nd day of August, 1906, the Court passed the decree from which this appeal was taken.    By this decree the Northern Central Railway Company, its agents, servants and employees, they and each of them, were perpetually enjoined from constructing, completing, and maintaining, using or operating in the bed of Twelfth avenue or across the same, any of the railroad tracks described in the bill of complaint, or any other additional railway tracks, except the tracks which were existing in the bed of Twelfth avenue or across the same prior to May 16th, 1906 ; and also from constructing, completing, maintaining, using or operating in the bed of Twelfth avenue the switches described in the bill of complaint, or any other additional switches thereon. And the said defendant, its agents, or servants and employees, they and each of them were commanded and required by the Court's writ of mandatory injunction forthwith to remove from the bed of Twelfth avenue all the said railroad tracks so far as the same had been constructed, except the tracks which were existing in the bed of Twelfth avenue or across the same prior to May 16th, 1906 ; and also to remove forthwith from the bed of Twelfth avenue the switches described in the bill of complaint; and also to restore forthwith the bed of said avenue to the condition in which it was before said switches and before any of said tracks, except the tracks existing as aforesaid prior to May 16th, 1906, were laid thereon.

For the reasons herein stated, this decree should be affirmed.

*Decree affirmed, the appellant to pay the costs above and below.*