# THE CONSOLIDATED GAS, ELECTRIC LIGHT & POWER CO. *vs.* NORTHERN CENTRAL RAILWAY CO.

*Injunction to Restrain Interferance with Erection of Poles of Electric Company on Line of Railway Company—Insufficient Allegations of Bill.*

The bill in equity of an electric light company alleged that, desiring to erect poles for its wires on the line of the defendant railway company in a certain locality, it was informed that the owners of the abutting land in that locality also owned the land used by the railway company, subject to that company's right of way; that it obtained from such owners permission to erect' poles on the land adjoining the railway tracks, and that the railway company had cut down the poles there erected. The bill prayed for an injunction to restrain such interference. No deed or other grant conveying the right claimed to the plaintiff company was filed with the bill, except a mere license from certain adjoining owners, and the bill did not show that any existing business of the plaintiff was interfered with, or state any facts showing that the alleged injury was irreparable    *Held*, that a demurrer to the bill was properly sustained.

*Decided April 9th, 1908.*

Appeal from the Circuit Court for Baltimore County. (BURKE, C. J.)

The cause was argued before BOYD, C. J., BRISCOE, PAGE, PEARCE, SCHMUCKER, THOMAS and WORTHINGTON, JJ.

*J. Southgate Lemmon* and *C. Baker Clotworthy*, for the appellant.

*Shirley Carter*, for the appellee.

PAGE, J., delivered the opinion of the Court.

This is an appeal from a decree of the lower Court sustaining the demurrer of the appellant, and dissolving the injunction theretofore issued.

The facts of the case as set out in the bill of complaint,

show, that the appellant is a corporation of the State of Maryland created for the purpose of supplying among other things electricity "for lighting and power purposes, to the citizens of Baltimore City and County; for such business "it is necessary to erect poles along the highways" in order to string thereon wire cables and other appliances required for the proper distribution to its customers of the current generated at its power houses.

It is alleged, that desiring to erect a line of poles for such purposes, from the intersection of the county road with the appellant's railroad, to a point mentioned in the bill, the appellee "on inquiry of the owners of the land abutting on the said line of railway" learned from them that "they owned the land up to the centre of the railroad tracks" and that the railroad had no other or further rights than the operation of its trains over and upon said tracks as laid;" thereupon the appellant entered into negotiations with Mrs. Josephine L. Stewart "who owns the greater part of said land lying to the south of said tracks and with James Piper and Charles Morton Stewart who own the balance thereof, to secure from them as the owners of the said land, the right to erect the line of poles as aforesaid;" and the said parties entered into an agreement authorizing and empowering the appellant to erect the poles on the lands abutting upon the said railroad tracks; the said agreement was filed with the bill together with the blue print attached showing the location of each pole to be erected. It is also shown that acting under this authority the appellant through it agents, proceeded to erect its line of poles, but upon two of them being erected, the appellees through its agents and servants, cut them down and filled in the holes which had been dug. That later on the appellant proceeded to replace the poles, whereupon the appellees again appeared and cut them down, whereupon the appellant to avoid a breach of the peace withdrew. The appellant avers that the said poles so erected or to be erected, were and will be upon and over lands not the property of the railway company, and will not in any way interfere with the operation of trains over

and along its track, and that the public business of the appellant will be seriously hampered and interfered with by the unlawful action of the appellee in intermeddling with its poles as stated. The appellant therefore prayed that the defendant mentioned and its servants and agents may be restrained from interfering with the complainant in the erection, &c., of the said poles, &c. &c.

To this bill, the railroad company interposed its demurrer, and assigned as grounds therefor, 1st. that the plaintiff has not stated in its bill such a case as entitles it to an injunction, nor 2nd. to any relief against the defendant.

The learned Judge below sustained the demurrer and dissolved the injunction, and from that decree this appeal is taken.

An objection to the sufficiency of the bill of complaint urged by the appellee in argument is, that the complainant has failed to set out a clear case upon which its equity rests, in that there is no deed or other instrument, filed on which, its equity can rest.

The alleged right that the appellant seeks to protect by the injunction, is, to erect and maintain a line of poles for the purpose of carrying electric wires from and along the land of other parties named in the bill, along the tracks of the railroad, for the purpose of maintaining its business of serving the public with electricity. It is not averred that it has any rights in and to the property, except as stated in the agreement made with Mrs. Stewart "who owns the greater portion of the said land," and with the two other persons who own the residue. This agreement made with these persons, "as owners of the land" under seal but not recorded, purports merely to grant unto the appellant, "*permission* to erect and maintain at its own risk and expense" &c. at the locations shown upon the plat, filed with the bill, electric light poles, &c. as set out in a copy of the agreement filed among the proceedings. It does not convey any rights in the land, or indeed anything, except a "permission" to erect and maintain poles upon the land. It would seem to be a very vio-

lent construction of the agreement to construe it as intended
by the parties thereto to vest in the appellant more than a
mere authority to do an act or a series of acts upon their
land, without passing any estate therein, and if this be correct
it could not confer upon the appellant more than a mere
license, the effect of which "amounts to nothing more than an
excuse for the act of erecting the poles which otherwise
would be a trespass." If on the other hand the privilege
could be regarded as of such a nature as would amount to a
right to use the land as a permanent right, then the instru-
ment would be ineffective for the reason that such a right can
not be granted without "a deed." · This doctrine seems to be
well established in this State. *Shipley* v. *Fink*, 102 Md. 226,
227; *Algire's case*, 63 Md. 321.

If this position is correctly stated, and it seems to us to be
so, there is no principle upon which the complainant in this
case can maintain its bill on the averments made. As was
in *Sellman* v. *Sellman*, 63 Md. 521, the bill must show "an
interest in the subject of the suit, a right to the thing de-
manded, and a proper title to institute suit concerning it." It
seems therefore to have been incumbent upon the appellant,
before it was entitled to the relief prayed, to show that it had
an interest in the establishment and maintenance of the poles
and a right to institute suit concerning them. This in sub-
stance is to set up an easement in the property, by which
there existed a right to use the land for the purpose of erect-
ing and maintaining the poles and therefore the complainant
should have filed copies of the deed under which it claimed
this right and in the contingency of it not being able to do so
it would not be in a position to insist that its equity was in-
volved or that any right to injunction had been made out.

In *Bernei* v. *Sappington*, 102 Md. 190, it was said that the
parties seeking the intervention of the Court must show a
clear title, or at least a fair *prima facie* case in support of the
title he asserts; and in that case as well as in *Nagengast case*,
93 Md. 525, it was also said, "if the complainant has in his
possession or can produce papers or instruments of writing on

which his equity rests, such papers or instruments of writing or copies thereof must be filed in support of the bill.".

It follows that inasmuch as this bill does not show a *prima facie* right on the part of the electric company in and to the land on which it proposes to place the poles as against the railroad company or any right as against it to erect and maintain the poles thereon the injunction was properly dissolved.

It was also insisted that the bill was defective in not setting out the facts that show the irremediable injury resulting from the actual or threatened wrongs. The bill charges that irreparable or serious injury, will result, from the respondent's action, but offers no facts from which the Court can see for itself that this result is correct as stated or reasonably to be anticipated. There is nothing to show what, if any, subscribers it had at the time the poles were cut down by the defendant, or if there were any, why such damages would be irreparable, or why they could not be recoverable in one suit, or why, if driven to law a multiplicity of suits would ensue, or for any reason the injury would be without adequate remedy at law. The bill sets out no special reasons why the cutting down of the poles would result in irreparable injury; in fact it is set forth only, that, the complainant is in the business of "supplying electric current for lighting and power purposes to the citizens of the city of Baltimore and the outlying districts of Baltimore County;" and such business, will be "seriously hampered and interfered with by the unlawful act of these respondents," and there would be no adequate redress unless, this "Court restrains, &c."

It is not stated that an *existing business* will be actually interfered with. In fact such a statement seems to have been carefully avoided. The allegations are,

1st. That the Light and Power Company of Baltimore, is a corporation for supplying light and power in the city of Baltimore, &c.

2nd. That "desiring to erect a line of poles for the purpose of carrying its electric wires from a point at the intersection of

the 'County road,' &c., to a point at the intersection of the county road and the railroad," it proceeded to erect its poles, "but upon two of the said poles being erected, the respondents cut them down and filled up the holes dug, &c."

It is clear the case made by the bill, is not that of a finished construction, broken down by the interference of the railroad company, but the beginning of a new line, interfered with before there was business at the point.   In other words the allegations seem to be in substance, that the appellant was beginning to put down a new electric line, when the railroad company obstructed it as to the erection and maintainance of two or more of its poles, and it is contended that such interference, *per se*, constitutes an irremediable injury for which there can be no remedy at law.   It seems to be obvious that from such an averment the Court cannot see that the injury is or is likely to be irremediable, and if this be so the averment is not sufficient according to the practice and rules of the Court to authorize an injunction as stated in the cases already cited.

There were other points raised at the hearing but from what has already been said it is clear the decree of the lower Court must be affirmed.

*Decree affirmed.*