ELIZA H. PHELPS *vs.* BERKSHIRE STREET RAILWAY COMPANY.

Berkshire.    September 25, 1911. — October 16, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, & SHELDON, JJ.

*Trespass,* Quare clausum fregit. *Mortgage,* Of land. *Damages,* In tort.

If the holder of a second mortgage on certain land knows that a street railway cor-
poration, with the consent of the owner of the equity of redemption, has erected
poles on the land and has strung wires on the poles for the transmission of a cur-
rent of electricity, and, rightly or wrongly supposing that the consent of the
owner of the equity of redemption gave the corporation the right to do this,
takes no step to prevent it, and afterwards the second mortgagee acquires by
foreclosure an absolute title to the land superior to any right derived from the
owner of the equity of redemption, he may demand the removal of the poles and
wires, and, if this request is refused, he can recover against the corporation in
an action in the nature of trespass *quare clausum fregit* for the continued main-
tenance of the structures.

In an action in the nature of trespass *quare clausum fregit* by the owner of a farm,
on which he lives with his family, against a street railway corporation, for the
wrongful maintenance on the plaintiff's land of poles and guy wires supporting
wires transmitting a powerful current of electricity from a power house of the
defendant, the character of the defendant's structures and of its acts in sending
a dangerous current of electricity over the plaintiff's land are proper matters for
consideration by the jury in the assessment of damages.

TORT in the nature of trespass *quare clausum fregit* for the
alleged unlawful maintenance of poles, wires and fixtures upon
the plaintiff's land at Williamstown for conducting a high vol-
tage electric current from the defendant's power station in the
town of Adams to Pownal in the State of Vermont.  Writ dated
November 29, 1909.

In the Superior Court the case was tried before *Crosby, J.*  It
appeared that the land in question was a farm belonging to the
plaintiff, on which she lived with her husband and family and
which was carried on by her husband; that on May 11, 1906,
the plaintiff, being then the owner of the land, gave a deed of it
to one Farnum, and took back from him a second mortgage, cov-
ering all the land conveyed, to secure the purchase price; that
on July 30, 1906, Farnum gave to the Hoosac Valley Street
Railway Company, of which the defendant was the successor, a
deed of the right " to erect and maintain its lines of high tension
wires, together with the necessary poles, wires and fixtures over,

across and upon " the land in question ; that the poles, guy wires and high tension electric wires were erected on the land shortly after this deed was given; that on July 1, 1908, the plaintiff foreclosed the mortgage given by Farnum and acquired title to the land ; that very shortly thereafter the plaintiff gave a notice to the defendant objecting to the poles and wires and requesting their immediate removal; but that the defendant never had removed the structures as requested.

The plaintiff's husband in answer to the question "What is the effect on the land of these poles and guy wires being located on it?" testified as follows : "Why, they are in the way all the time. You can't get very near them. These guy wires are in your way, and you can't mow round them nor get to them, and where they run through the orchard, we can't pick the apples under them, and the trees seem to be dying under them. I don't know whether they affect it, but there is something wrong there since the poles come. And you are all the time scared to death for fear you will get hurt with them, and if my family is in the garden to work they are afraid of them. One got down once and set the grass afire and it frightened us."

At the close of the evidence the defendant asked the judge to rule that upon all the evidence the plaintiff was not entitled to recover. The judge refused to make this ruling and submitted the case to the jury.

Upon the question of damages, the judge among other instructions gave the following: "It appears from the evidence here, and is undisputed, both that these wires are maintained there for the purpose of carrying and have carried a high current of electricity, which current is being used for the running of cars between Adams and Bennington in the State of Vermont. They are high voltage or high tension wires, as they are called. They are wires which we all know if a person comes in contact with them, it may be attended with very serious consequences. So, too, in considering the damages, the jury should take into account the way in which these wires are put up on the premises and the effect, if any, of the electricity which is carried on the wires upon the trees in the orchard, any injury that there may be to them, and any danger, if there is any danger, by coming in contact with the wires in the gathering of the crops which the

plaintiff may have to gather from time to time, including the apples as well as the crops grown on the land. . . . The plaintiff would be entitled to have you consider as an element of damages any real tangible danger, if any, that exists which impairs or hinders her right to use, cultivate and work the land for any purpose for which the land is reasonably adapted or suited." The defendant excepted to that part of the charge "which refers to the danger in the use of the land being regarded as an element of damage in any aspect of this case."

The jury returned a verdict for the plaintiff in the sum of $150; and the defendant alleged exceptions.

The case was submitted on briefs.

*H. W. Ely & J. B. Ely,* for the defendant.

*J. F. Noxan & M. L. Eisner,* for the plaintiff.

SHELDON, J.  1. The plaintiff's knowledge that the defendant had entered this land and put up poles and strung wires thereon is not necessarily fatal to her maintenance of the action. She was then merely a second mortgagee of the premises, and rightly or wrongly supposed that the consent of the owner of the equity of redemption gave the defendant the right to do what it did.  But this did not authorize the defendant, after the plaintiff's superior title had become absolute, to maintain its structures upon her land without her consent and against her prohibition.  For such maintenance and the continued use of the poles and wires for the transmission of an electric current over the land after her request for their removal the plaintiff can maintain an action of trespass *quare clausum.*  She does not recover for the original entry and erection of the poles and wires, but for their wrongful maintenance and use in defiance of her request.  This was the point decided in *Benjamin* v. *American Telephone & Telegraph Co.* 196 Mass. 454.  The case is not like *Beers* v. *McGinnis,* 191 Mass. 279, or *Fenner* v. *Sheldon,* 11 Met. 521, relied on by the defendant.

2. The instructions as to the measure of damages were correct and well guarded.  The action was for the wrongful disturbance of the plaintiff's possession; and the character of the defendant's structures and of its acts in sending a dangerous current of electricity over her land was material to be considered.  *Hunter* v. *Farren,* 127 Mass. 481, 484.  *French* v. *Connecticut River Lum-*

ber Co. 145 Mass. 261. Pye v. Faxon, 156 Mass. 471, 474. See the discussion as to proximate and remote damages in Leavitt v. Fiberloid Co. 196 Mass. 440, 446, et seq.

3. The other exceptions have not been argued, and we treat them as waived.

*Exceptions overruled.*