MAYOR AND CITY COUNCIL OF BALTIMORE *v.*
WILLIAM F. BRACK
[No. 70, October Term, 1938.]

*Decided January 11th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Morris A. Baker, Assistant City Solicitor,* with whom was *Charles C. G. Evans, City Solicitor,* for the appellant.

*Edward J. Colgan, Jr.,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case is from that part of a decree of the Circuit Court of Baltimore City, passed on the 4th day of April, 1938, which enjoins the appellant from further using or permitting the use of a certain 20-inch water main, and certain sewers and drains, after the period of sixty days, accounting from the date of the decree; the decree requiring the appellant to remove said water main, sewers and drains from the premises of the appellee within 120 days from the date thereof. As originally filed, the bill of complaint alleged trespasses upon the property of the appellee other than those involved in the use of the water main, sewers, and drains above mentioned, in or over the lands of the appellee; which additional alleged trespasses need not be considered in this opinion, for the reason that the appellant has acquiesced in the disposition

of them in said decree by the learned chancellor below, and has not appealed therefrom.

The case was heard upon bill, answer and testimony; and the facts upon which the decree was passed, which are substantially undisputed, are as follows: William F. Brack, on September 19th, 1936, acquired by purchase a tract of land containing from forty to forty-two acres, situate, lying and being in Baltimore City, and adjoining what is known as the Hillsdale Golf Course on the east and south, belonging to the City of Baltimore, the appellant; and, at the time the appellee acquired title to the tract of land, there was laid across and over a part of the same a 20-inch water main feeding Dickeyville and Catonsville, suburban sections of the city; the course of said water main being in a continuous straight line with the same general course of what is designated on the plat filed in the case as Rogers Avenue, and extending for the approximate distance of 1,045 feet to what is also designated on said plat as Alabama Avenue, the latter avenue being the south boundary of the land of the appellee. The water main is so constructed as to be entirely below the surface of the ground, except that extending above the same there are two or three fire plugs and cover plates over valves. Following the line of what is designated on the plat as being Fendall Road, through the land of the appellee, to what is shown on the plat to be California Boulevard, which boulevard marks the northeasterly and northerly boundary of the appellee's land, for a distance of approximately 700 feet, and below the surface, there are laid a storm water drain and a sanitary sewer, which find their outlet under the bed of California Boulevard. It appears that all of the utilities above mentioned were known to the appellee at the time of his purchase of the property, and were constructed upon the premises some years prior to the transfer of the title to him, with the consent of the then owners of the property, but nevertheless, without an executed and recorded license for the purpose from the licensor to the licensee, the City of Baltimore; and that no consideration ever passed from the

618

city to the then owner for the concessions; nor has Mr. Brack, the appellee, since his ownership of the property, received any consideration for the use of the utilities, or granted the City any rights in the premises. And there is testimony in the record tending to show that at the time the utilities were placed on the property above mentioned, or subsequently thereto, negotiations were conducted between officials of the City and Mr. and Mrs. Lacey, the former owners of the property, or their representatives, designed to secure for the City a legal transfer of the easement in place of the oral license; which negotiations, as above indicated, were never finally concluded. Both Mr. and Mrs. Lacey are now deceased.

In this situation the appellee, on May 6th, 1937, filed a bill of complaint alleging the use of his land as indicated, without legal authority from himself or his predecessors in title; the serious interference with his own right to use the land in line with his plans to develop the same, because of the location of said utilities upon them; and praying that a permanent injunction be issued, compelling the Mayor and City Council of Baltimore to remove the water main from his premises, or be restrained from using the same without due compensation therefor to him, and to remove or discontinue the use of the sewer and drain pipes. The answer admits the location of the utilities, and their use by the City; and sets up, in justification of its alleged trespass, the oral license to use the property for the purposes aforesaid, accorded the City by predecessors in title of the complaint.

It will thus be observed that the questions raised by the appeal are: (a) Whether, under an admittedly oral license, the City has the right to continue the use of the utilities over the land of the appellee; and, (b) if it be determined that it does not have that right, what form of decree shall be passed, in view of the undisputed fact that the appellant is a municipal corporation and that the utilities involved are used in public service? A subsidiary question arises from the contention, pressed by the appellant in its brief, that the City is entitled to compensation

as a condition to the revocation of the license, in event the revocation is decreed; and in support of that contention the cases of *Carter v. Harlan,* 6 Md. 20; *Lake Roland El. Ry. Co. v. Baltimore,* 77 Md. 352, 26 A. 510; *Northern Central Ry. Co. v. Canton Co.,* 104 Md. 682, 65 A. 337; and *Brehm v. Richards,* 152 Md. 126, 127, 136 A. 618, are cited. As this question is closely related to the first question above noted, the two will be discussed together.

A careful examination of the above cited cases discloses that in each of them the question of compensation arose in a controversy between the original licensor and licensee; except, however, that of *Carter v. Harlan, supra,* a suit at law in trespass, wherein the plaintiff's predecessor in title had accorded the defendant the right to erect a mill-dam, which backed water upon the plaintiff's lands; and in which case it was decided that the sale and conveyance of the overflowed lands by the owner to the plaintiff, subsequent to the erection of the dam, was by mere operation of law a revocation of such license. In that case, it may be added, no improvements were placed on the plaintiff's land as a result of the license; and the court affirmed the principle that the right to overflow another's land by a mill-dam was an interest in land, which could not pass by parol, citing *Hays v. Richardson,* 1 G. & J. 366; *Addison v. Hack,* 2 Gill, 221, 222; and *Cook v. Stearns,* 11 Mass. 533, 538. While it is true, as quoted in the appellant's brief from the concluding part of the opinion filed in *Carter v. Harlan, supra,* that the following language was used: "We of course put out of view all that class of cases where, because of a license, a party has been put to an expense and outlay on the land of the licensor," it is our conclusion that the court intended the reference to apply only to such cases as involved transactions between the original licensor and licensee, and in no way contemplated a subsequent *bona fide* purchaser of land, who, although with full knowledge of an existing parol license from the former owner, or his own grantor, takes title thereto by deed in full compliance with the registry laws of the State (Code, art. 21), because it is definitely set-

tled by this article that no interest in land for a term exceeding seven years can be transferred except by deed duly executed and recorded. *Hays v. Richardson, supra; Peter v. Schley*, 3 H. & J. 211; *Polk v. Reynolds*, 31 Md. 106; *Partridge v. First Ind. Church*, 39 Md. 631; *Rayner v. Nugent*, 60 Md. 515; *Baltimore & Hanover R. Co. v. Algire*, 63 Md. 319; *Consolidated Gas Co. v. Northern Cent. R. Co.*, 107 Md. 671, 69 A. 518; *Lake Roland El. Ry. Co. v. Baltimore, supra; Northern Central Ry. Co. v. Canton Co., supra; Brehm v. Richards, supra; Shipley v. Fink*, 102 Md. 219, 62 A. 360, 1002.

The latter case was one in which the occupant of one of two adjoining properties in Westminster proposed to build a butcher shop between the house on his property and the dividing line, and to widen the building in the rear of his property. At the request or suggestion of the adjoining owner, he changed his plan, and agreed to utilize the space to the side of the adjoining owner's house, build on both sides of the dividing line, and so avoid darkening the rear windows of the adjoining house. Under this oral license the shop was built, and remained across the line of both parties for at least four years, when a subsequent owner of the adjoining lot ordered the structure removed, and as it was not removed, undertook to tear it down. The owner of the structure brought his bill in equity for specific performance of an alleged agreement to convey a strip of the adjoining property covered by the building, and for an injunction against the tearing down of the building. The court failed to find an enforceable agreement to convey the strip, and concluded that there was nothing more than a parol license for the enjoyment of the easement in the land and the wall of the house against which the structure was built; and such a license the court found to be revocable, so that the removal of the structure could not be prevented by a court of equity. In the opinion in that case, the court, among other citations, quoted from the case of *Houston v. Laffee*, 46 N. H. 505, 507, as follows: "It has been held that, where a license like the one in this case has been given to plaintiff to enter upon defendant's land and do acts

which involved expenditure of money, and the license becomes executed by an expenditure incurred, it is irrevocable, on the ground that a revocation under such circumstances would be fraudulent or unconscionable. But we think the later decisions sustain the doctrine that the license is in all cases revocable, so far as it remains unexecuted, or so far as any future enjoyment of the easement is concerned; for to hold otherwise, would be giving to a parol license the force of a conveyance of a permanent easement in real estate, and no such right or interest in real estate can be created by parol." After quoting the above authority, the court in the *Shipley* case continued: "It is true, as contended by the appellee, that the fact of the possession of a party whose rights are involved in a purchase is a sufficient intimation of his right to put the purchaser upon inquiry into the nature of those rights, and that, failing to make it, he is in equity visited with all the consequences of a knowledge of the plaintiff's rights. *Baynard v. Norris*, 5 Gill 483; *Duval v. Wilmer*, 88 Md. 66, 41 A. 122. But this doctrine is only applicable to a case where the possession is under a claim of right or title to some estate in the land, which is established by proof, and not where there is a mere easement under a parol license which is subject to revocation at the will of the licensor, and which, as declared in *Carter v. Harlan, supra*, is in fact revoked by sale and conveyance, as in this case. * * * Accordingly, if Reigel, the licensor, were still the owner of the land and the defendant in this suit, he would not be allowed to withdraw his consent and prevent the future use of the building, erected for the enjoyment of the easement, without making compensation to Mr. Fink [the licensee], and the court would retain the bill to enable it to ascertain and decree a just compensation, in order that he should not be put to the trouble and expense of a second suit in another tribunal. * * * This relief, however, cannot be granted the appellant under the circumstances of this case." The converse of the proposition above enunciated is found in *Brehm v. Richards. supra*, where, as between the original licensor and licensee, the latter had constructed a road

upon the faith of an implied license given him to use a bridge with which it connected, and the license was thereafter revoked by the original licensor. An injunction was issued to make the revocation effectual only on condition that the owner of the bridge pay to the licensee a reasonable compensation for the construction work on those portions of the road which the licensee would cease to use on the issuing of the injunction, and which were beneficial to the licensor in his use of the bridge, and that the licensee should be allowed a reasonable time in which to construct another crossing to use in place of the bridge.

A brief summary of the cited cases, therefore, leads to the conclusion that unrecorded grants of easements in land must give way to a grant of the fee, and that apart from a prescriptive right, an easement is an interest in land which cannot be created except in the mode and manner prescribed by the recording statutes of this state; that a license for the use of land is revocable, both at law and in equity, whether the license is or is not executed by the expenditure of money by the licensee; and that the latter, upon the revocation of the license, can claim compensation for expenditures made by him upon the premises on the faith of the license, as against the original licensor only.

In the application of the law to the facts of the instant case, we are, therefore, in accord with the conclusion of the chancellor in the lucid opinion found in the record, as follows: "That the testimony here goes no further than to show that the City had permission from Mr. Lacey and from Mrs. Lacey respectively to lay these sewers and water main, and thereby acquired no interest or easement in Brack's land, but acquired a license only, and that said license is revocable at Mr. Brack's will. There is nothing inequitable in that point of view, because the City did not install the works referred to upon any false representations or unfulfilled promises, but at its own risk, knowing precisely the Laceys' title and the extent and revocability of the permission granted." It follows, therefore, from what has been said, that the city is not entitled to compensation for expenditures made upon the premises,

but on the contrary, is liable to the appellee for reasonable compensation for the use of the easement, pending such time as may be necessary to effectuate either the removal of the utilities from the property, or the acquisition of the easements or property by condemnation proceedings.

This conclusion is reached because the municipality is charged with the all-important public service of supplying sewerage, drainage and water facilities to its inhabitants; and while it may or may not be true that the removal of its utilities, to the extent involved in the instant case, before such time as may be required by the City to acquire new easements or rights of way for the continued service of the particular utility, would inconvenience and endanger the health of the public, the record being silent as to this phase of the question, in our opinion the record does not reveal a situation in which irreparable injury to the rights of the appellee will result by such delay as has been indicated.

In the recent case of *Livezey v. Bel Air,* 174 Md. 568, 199 A. 838, in which the plaintiff applied for injunctive relief from alleged pollution of a stream passing through his farm, by reason of the efflusion from the disposal plant of the town of Bel Air, this court, in reversing a decree of the lower court dismissing the bill, remanded the case, to be retained, and ordered that no injunction should be issued until the municipality was given a reasonable time in which to correct the conditions of which the appellant complained, with leave to the appellant to renew his application for injunction against the municipality unless, within some time to be fixed by the chancellor, the cause of complaint was abated. It was there said: "A municipality, in establishing drains and sewers, is subject to liability if it so constructed and maintained them as to create a private nuisance, so as to injure another in the use and enjoyment of his property. * * * It may be conceded that the municipality is liable to the appellant for harm caused to his interests in the stream polluted by its sewerage system. That liability may be enforced by an action at law, or in a proper case by injunc-

tion. *Cityco Realty Co. v. Annapolis,* 159 Md. 148, 155 150 A. 273; *McQuillan on Municipal Corporations.* secs. 1586, 1557, 954, 955, 2880; *Baltimore v. Fairfield Imp. Co.,* 87 Md. 352, 360, 39 A. 1081; *Block v. Baltimore,* 149 Md. 39, 56, 129 A. 887; * * *. Injunctive relief should not be granted except on a clear and satisfactory showing of grave and irreparable injury to private rights, and where the effect of the injunction will be to endanger the public health and security, no injunction should issue until the municipality is given an opportunity of abating the injurious conditions by adopting some substitute, by correcting any faults in the operation of the system, by acquiring the property damaged, or by other appropriate measures. In such a case the doctrine of balancing equities, by which consideration may be given to the relative gravity of the harm which the injunction will inflict on the public if it is issued, and the harm which the complainant will suffer if it is refused, may be invoked. 46 *C. J.* 774; *Huebschmann v. Grand Co.,* 166 Md. 615; 620, 621, 172 A. 227; *Taylor v. Baltimore,* 130 Md. 133, 146, 99 A. 900."

This conclusion, under the facts in the case before us, would seem reasonable, because, as we have indicated, the City must meanwhile pay the appellee for the use of the easements, and because the duty is incumbent upon the City either to remove the utilities as prayed for in the bill of complaint, or to acquire them through condemnation or otherwise, within a reasonable time, under all the circumstances of the case; such reasonable time to be limited to such period as is necessary for the expeditious conduct of final condemnation proceedings. *Wisconsin v. Illinois,* 278 U. S. 367, 399, 49 S. Ct. 163, 73. L. Ed. 426; *Potomac Elec. Power Co. v. Wall,* 153 Md. 229, 137 A. 899; *Caretti v. Boring Building Co.,* 150 Md. 198, 132 A. 619; *Livezey v. Bel Air, supra.*

> *Decree affirmed, with costs, and cause remanded, with leave to the defendant to apply for a stay as indicated in the opinion.*