## NORMAN BUSADA *v.* RANSOM MOTORS, INC.

[No. 769, September Term, 1975.]

*Decided June 8, 1976.*

The cause was argued before THOMPSON, MENCHINE and LOWE, JJ.

*Bert W. Kapinus* for appellant.

*Jess Joseph Smith, Jr.,* for appellee.

MENCHINE, J., delivered the opinion of the Court.

An action for trespass q.c.f. was filed in the Circuit Court for Prince George's County by Norman Busada (appellant) against Ransom Motors, Inc. (appellee). The latter had used a part of what later became appellant's land to store automobile bodies and parts. Appellee's use of the land commenced under an oral license conferred by appellant's predecessor in title. Appellant, shortly after acquisition of his possessory interest in the land, gave written notice on September 11, 1973 to the appellee demanding removal of the chattels. They were not removed for some five months following the demand. The subject suit was brought to recover damages for continuing trespass from October, 1973 to February, 1974 when the chattels were removed by the appellee. At the conclusion of the appellant's case (plaintiff below) the trial judge granted the appellee's (defendant below) motion for a directed verdict. From the judgment thereafter entered appellant has appealed. We shall reverse.

It is undisputed that the appellant derived title to the real property in question on June 14, 1973. It is undisputed also that the appellee had no right, title, interest or estate in that property save for an oral license from appellant's predecessor in title. In *Zimmerman v. Summers*, 24 Md. App. 100, 330 A. 2d 722 (1975), we said at 124 [736]:

> "The rule adopted and applied in Maryland is that an oral license by an owner of land permitting another to use the land of the licensor is absolutely revocable. It is a personal privilege and is usually terminated on the death of either of the parties or by the transfer of ownership of either the land subject to the license or the land for the benefit of which the license was given."

In *Baltimore v. Brack*, 175 Md. 615, 3 A. 2d 471 (1939),

wherein the City of Baltimore had laid water and sewer lines and drainage facilities across the lands of Brack under an oral agreement with the prior owner of the tract, the Court of Appeals, after consideration and discussion of many Maryland and out of state cases, posed the following question, *inter alia*, at 618 [473]:

> "It will thus be observed that the questions raised by the appeal are: (a) Whether, under an admittedly oral license, the City has the right to continue the use of the utilities over the land of the appellee; . . . ."

It answered the question at 622 [474-75]:

> "A brief summary of the cited cases, therefore, leads to the conclusion that unrecorded grants of easements in land must give way to a grant of the fee, and that apart from a prescriptive right, an easement is an interest in land which cannot be created except in the mode and manner prescribed by the recording statutes of this state; that a license for the use of land is revocable, both at law and in equity, whether the license is or is not executed by the expenditure of money by the licensee; . . . ."

It is true that *Zimmerman* and *Brack*, both *supra*, were equity actions rather than suits at law for trespass. We consider this circumstance to be without significance.

In 1 Restatement of Torts 2d, Ch. 7 Trespass on Land, and Privilege to Enter Land, Ch. 8, it is said, *inter alia*, in §§ 160 and 171:

> "§ 160. Failure to Remove Thing Placed on Land Pursuant to License or Other Privilege
>
> A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor or his predecessor in legal interest has placed on the land
>
> (a) with the consent of the person then in possession of the land, if the actor fails to remove it

after the consent has been effectively terminated, or

(b) pursuant to a privilege conferred on the actor irrespective of the possessor's consent, if the actor fails to remove it after the privilege has been terminated, by the accomplishment of its purpose or otherwise.

\* \* \*

"Comment on Clause (a):

d. If a structure, chattel, or other thing is placed on land with the possessor's consent conditioned upon the actor's subsequently removing it, the termination of consent creates a duty to remove it from the land, . . . .

e. *Continuing trespass.* The intentional violation of such a duty of removal constitutes a continuing trespass for the entire time during which the actor is under a duty to remove the thing, and gives to the possessor of the land a series of independent causes of action for trespass unless and until the actor disseises the possessor (see § 162, Comment c), or by adverse user acquires an easement.

\* \* \*

g. *Mistaken belief that license is irrevocable.* Even though the actor or his transferor has not agreed to remove the structure, chattel, or other thing from the land upon the termination of the license pursuant to which it was placed there, as where the parties act under a mistaken belief that the license is irrevocable, the termination of the license creates a situation in which the rule stated in this Section applies.

Illustration:

2. A executes and delivers to the B Telephone Company a document which both

parties believe confers on the B Company an irrevocable license to erect and maintain telephone poles on A's land. A transfers the land to C, who discovers that the document and the acts done under it do not create an irrevocable license. C notifies the B Company to remove its poles from the land. The B Company's failure to remove the poles within a reasonable time is a trespass.

\* \* \*

The rule of continuing trespass is applicable not only where the ownership or possession of the structure, chattel, or other thing is transferred after such thing comes upon the land (see Comment *i*), but also where the possession of the land is transferred thereafter . . . .

"§ 171. Termination of Consent

Subject to the privileges of reasonable egress and removal of things, the actor's privilege to enter land created by consent of the possessor is terminated by

(a) the doing of any act, or the happening of any event, or the lapse of any specified period of time by which the consent is restricted, or

(b) a revocation of the possessor's consent, of which the actor knows or has reason to know, or

(c) *a transfer or other termination of the possessor's possessory interest in the land.*

\* \* \*

Comment on Clause (c):

f. A consent given by one in possession of land ceases to be effective as conferring a privilege to enter or remain, when the interest of the licensor in the land is terminated. This rule is applicable to a transfer of the interest of the consenting possessor

to a third person, whether voluntary or involuntary, inter vivos, or upon death. This is true although the licensee is not notified, and neither knows nor has reason to know that the consent given has been invalidated by termination of the interest in the land." [1] (Emphasis added.)

Applicability of the rule of *Brack* and *Summers*, both *supra*, to actions at law for trespass q.c.f. seems to be widely recognized. In Prosser, *Law of Torts*, Ch. 3, § 13, at 73-74 (4th Ed., HB, 1971), it was said:

"The trespass may also be committed by remaining on the land after a right of entry has terminated. Thus it is a trespass to refuse to leave after a license to remain has been revoked, or to fail to remove property at the end of an agreed period. At common law the action must be on the case, since there was no forcible invasion; but since the forms of action have been discarded, it is commonly held that there is an actionable trespass."

In *Phelps v. Berkshire St. Ry.*, 96 N. E. 128 (Mass. 1911), a leading case, it was said at the title page:

"The plaintiff's knowledge that the defendant had entered this land and put up poles and strung wires thereon is not necessarily fatal to her maintenance of the action. She was then merely a second mortgagee of the premises, and rightly or wrongly supposed that the consent of the owner of the equity of redemption gave the defendant the right to do what it did. But this did not authorize the defendant, after the plaintiff's superior title had become absolute, to maintain its structures upon her land without her consent and against her prohibition. For such maintenance and the continued use of the poles and wires for the

---

1. The decision in this case determines *only* the legal sufficiency of the evidence to establish a *prima facie* cause of action. We express no view upon issues of defense or damages.

transmission of an electric current over the land after her request for their removal the plaintiff can maintain an action of trespass quare clausum. *She does not recover for the original entry and erection of the poles and wires, but for their wrongful maintenance and use in defiance of her request."* (Emphasis added.)

In *Benjamin v. American Telephone & Telegraph Co.*, 82 N. E. 681 (Mass. 1907), it was said at the title page:

"The pole and the anchor to which the guy was attached had been set in the ground and the wires had been strung before the plaintiff became the owner of the premises, and she cannot therefore maintain an action for the trespass, if any, thereby committed. But the action of trespass quare clausum lies for any direct and wrongful invasion of the possession of another, and the maintenance of the pole and anchor and the operation of the wires by the defendant company under the contract between it and the American Telephone & Telegraph Co. of Massachusetts *after the plaintiff became the owner of the locus and after a demand had been made by her for their removal constituted or could be found to constitute, in the absence of a legal justification therefor, a direct and wrongful invasion of the plaintiff's possession, and as such to entitle her to maintain an action of trespass quare clausum therefor.* 'The gist of the action is the disturbance or violation of the plaintiff's possession.' " (Emphasis added.)

The Massachusetts cases of *Phelps* and *Benjamin*, both *supra*, were discussed in *Garver v. Public Service Co. of New Mexico*, 421 P. 2d 788 (N.M. 1966) and their holding succinctly stated at 794:

"These cases stand for the proposition that one who purchases real estate after a trespass has been

committed thereon, cannot maintain an action for such prior trespass, *but may recover for trespasses which continue after the purchase.*" (Emphasis added.)

We hold that the evidence produced by the appellant was legally sufficient to support an action at law for trespass q.c.f. This cause of action exists by reason of the alleged failure to remove the chattels from the land. The fact that there was no showing that appellee deposited additional chattels upon the land subsequent to its acquisition by the appellant is without legal significance. The gravamen of the subject action was the failure of the appellee to effect removal of the chattels after notice.

*Judgment reversed and case remanded for a new trial. Appellee to pay costs.*